ACCEPTED
01-14-00482-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/12/2015 1:36:28 PM
CHRISTOPHER PRINE
CLERK

# NO. 01-14-00482-CV

_____

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/12/2015 1:36:28 PM
CHRISTOPHER A. PRINE
Clerk

_____

RSL-3B-IL, LTD.

v.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, ET AL.

_____

ON APPEAL FROM THE 269TH
DISTRICT COURT OF HARRIS COUNTY, TEXAS

_____

**BRIEF OF APPELLEES THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AND PRUDENTIAL STRUCTURED SETTLEMENT COMPANY F/K/A PROPERTY AND CASUALTY INSURANCE COMPANY OF HOLMDEL, NEW JERSEY**

_____

Patrick B. Larkin
State Bar No. 24013004
plarkin@larkin-law.com
The Larkin Law Firm PC
11200 Broadway Street, Suite 2705
Pearland, Texas  77584
Telephone: (281) 412-7500
Facsimile: (281) 412-7502

**Of Counsel:**
Stephen R. Harris
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757

**Counsel for Appellees The Prudential Insurance
Company of America and Prudential Structured
Settlement Company f/k/a Prudential Property
and Casualty Insurance Company of Holmdel, New Jersey**

# IDENTITY OF PARTIES AND THEIR COUNSEL

In accordance with TEX. R. APP. P. 38.1(a) and TEX. R. APP. P. 38.2 (a)(1)(A), the following is a complete list of all parties to this appeal:

**Appellant:** RSL-3B-IL, LTD.

**Counsel for Appellant:**

E. John Gorman – trial and appellate counsel
State Bar No. 08217560
jgorman@feldlaw.com
John R. Craddock – trial and appellate counsel
State Bar No. 04969800
jcraddock@feldlaw.com
The Feldman Law Firm LLP
Two Post Oak Central
1980 Post Oak Blvd., Suite 1900
Houston, Texas 77056-3877
Telephone: (713) 850-0700
Facsimile: (713) 850-8530

**Appellees:** THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AND PRUDENTIAL STRUCTURED SETTLEMENT COMPANY F/K/A PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY OF HOLMDEL, NEW JERSEY

**Counsel for Appellees:**

Patrick B. Larkin – trial and appellate counsel
State Bar No. 24013004
plarkin@larkin-law.com
The Larkin Law Firm PC
11200 Broadway Street, Suite 2705
Pearland, Texas 77584
Telephone: (281) 412-7500
Facsimile: (281) 412-7502

Stephen R. Harris – trial and appellate counsel; admitted *pro hac vice*
Stephen.harris@dbr.com
Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103-6996
Telephone: (215) 988-2700
Facsimile: (215) 988-2757


**Appellee:** SETTLEMENT CAPITAL CORPORATION

**Counsel for Appellee:**

Earl S. Nesbitt
State Bar No. 14916900
enesbitt@nvmlaw.com
Davis S. Vassar
State Bar No. 20503175
dvassar@nvmlaw.com
Nesbitt, Vassar & McCown, LLP
15851 Dallas Parkway, Suite 800
Addison, Texas  75001
Telephone: (972) 371-2411
Facsimile: (972) 371-2410


**Appellee:** OLUBUMI ADEGOKE

**Counsel for Olubumi Adegoke:**

Greg Hill
State Bar No. 24042990
ghill@greghilllaw.com
Greg Hill, Attorney, PLLC
11200 Broadway, Suite 2743
Pearland, Texas  77584
Telephone: (832) 895-6640
Facsimile: (832) 895-6444

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. iii

RECORD REFERENCES .................................................................. xii

STATEMENT OF THE CASE ............................................................ xiii

ISSUES PRESENTED ........................................................................ xiv

MAY IT PLEASE THE COURT: ......................................................... 1

I.  STATEMENT OF FACTS ......................................................... 4

  A.  The Underlying Settlement Agreement, the Qualified Assignment, and the Annuity ..................................... 4

  B.  The Factoring Transaction with Settlement Capital Corporation ........................................................... 7

  C.  The 2003 Factoring Transaction with Rapid Settlements, Ltd. and the Conflicting Order ......................... 9

  D.  RSL's Petition and the Prudential Defendants' Interpleader ............................................................ 14

  E.  The Trial and the Final Judgment ............................. 15

  F.  Olubumi Adegoke's Intervention and Nonsuit, and the Court's Severance ................................................. 17

II.  SUMMARY OF THE ARGUMENT .......................................... 18

III.  ARGUMENT ............................................................................ 20

  A.  Standard of Review for Appeal of Directed Verdict ............... 20

  B.  RSL's Breach of Contract Claim Fails, and the Court Should Affirm the Directed Verdict ........................ 21

    1.  The Rapid Order is Not a Contract with Prudential Defendants ........................................... 22

    2.  Adegoke Had No Rights in the Annuity to Assign ....... 25

    3.  As a Mere Incidental Third-Party Beneficiary, Adegoke had No Enforceable Interests in the Annuity ....................................................... 29

4.    RSL Was Not Assigned the Separate Contracts of the Annuity, Settlement Agreement, and Qualified Assignment ................................................................33

5.    The Anti-Assignment Language is Enforceable ..........35

6.    RSL has failed to Establish Standing ...........................38

7.    RSL Failed to Establish a Valid Contractual Assignment .................................................................40

C.    The Trial Court Properly Severed the Case ............................41

D.    RSL is Wrong on the Interpleader Facts and Relief, and the Trial Court Properly Determined That the Prudential Defendants Interpleaded the Funds.........................................44

1.    There Were Conflicting Claims to the Funds, and Trial Court Properly Recognized that the Prudential Defendants Interpleaded the Funds..............44

2.    The Prudential Defendants Attempted to Resolve the Conflicting Payment Directions, But RSL and Rapid were Uncooperative.  The Prudential Defendants Filed their Interpleader Promptly with their Answer..................................................................49

3.    The Jury Properly Awarded the Prudential Defendants their Fees ..................................................52

IV.    PRAYER FOR RELIEF .........................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Matter of 321 Henderson Receivables Origination LLC (Logan)*,
  19 Misc. 3d 504, 865 N.Y.S. 2d 817 (N.Y. Sup. Ct. 2008)..........................36, 37

*In re All Trac Transp., Inc.*,
  306 B.R. 859 (Bankr. N.D. Tex. 2004)..............................................................24

*Allstate Ins. Co. v. American Bankers Ins. Co. of Florida*,
  882 F.2d 856 (4th Cir. 1989) .......................................................................26, 32

*Am. Zurich Ins. Co. v. Barker Roofing, L.P.*,
  387 S.W.3d 54 (Tex. App.—Amarillo 2012, no pet.) ......................................22

*AMX Enters., L.L.P. v. Master Realty Corp.*,
  283 S.W.3d 506 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) ............53

*Austin Nursing Ctr., Inc. v. Lovato*,
  171 S.W.3d 845 (Tex. 2005) ............................................................................38

*AVCO Corp. v. Interstate Sw., Ltd.*,
  251 S.W.3d 632 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)............39

*Avila v. Lone Star Radiology*,
  183 S.W.3d 814 (Tex. App.—Waco 2005, no pet.) ....................................51, 52

*Barnett v. Woodland*,
  310 S.W.2d 644 (Tex. App.—Austin 1958, writ ref'd n.r.e.) ...........................44

*Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank*,
  763 S.W.2d 52 (Tex. App.—Dallas 1988, writ denied) ....................................52

*Bill Nolan Livestock, Inc. v. Simpson*,
  402 So. 2d 214 (La. Ct. App. 1981)..................................................................24

*Blackmon-Dunda v. Mary Kay, Inc.*,
  2009 Tex. App. LEXIS 2512 (Tex. App. —Dallas, Apr. 1, 2009, pet.
  denied)...............................................................................................................28

*Boston Prop. Exch. Transfer Co. v. Iantosca*,
834 F. Supp. 2d 4 (D. Mass. 2011)..................................................................24

*Brown v. Mesa Distributors, Inc.*,
414 S.W.3d 279 (Tex. App.—Houston [1st Dist.] 2013, no pet.).....................40

*Bruner v. Exxon Co., U.S.A., A Div. of Exxon Corp.*,
752 S.W.2d 679 (Tex. App.—Dallas 1988, writ denied).................................30

*Bryant v. United Shortline Inc.*,
984 S.W.2d 292 (Tex. App.—Fort Worth 1998, no pet.)................................45

*Cadle Co. v. Henderson*,
982 S.W.2d 543 (Tex. App.—San Antonio 1998, no pet.) ..............................40

*Camco Oil Corp. v. Vander Laan*,
220 F.2d 897 (5th Cir. 1955) ...........................................................................30

*Carlile v. Harris*,
38 S.W.2d 622 (Tex. Civ. App.—Galveston 1931, no pet.) .............................28

*Cavadi v. Bank of Am.*,
2008 DNH 66, 2008 U.S. Dist. LEXIS 26389 (D.N.H. 2008)..........................24

*City of Beaumont v. Guillory*,
751 S.W.2d 491 (Tex. 1988) ............................................................................42

*Clayton v. Mony Life Ins. Co. of Am.*,
284 S.W.3d 398 (Tex. App.—Beaumont 2009, no pet.)........................45, 47, 49

*Cloughly v. NBC Bank-Seguin, N.A.*,
773 S.W.2d 652 (Tex. App.—San Antonio 1989, writ denied) ........................37

*Conoco, Inc. v. Republic Ins. Co.*,
819 F.2d 120 (5th Cir. 1987) ...........................................................................37

*Cook Composites, Inc. v. Westlake Styrene Corp.*,
15 S.W.3d 124 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd) ..............35

*In re D. Wilson Construction Co.*,
196 S.W.3d 774 (Tex. 2006) ............................................................................35

*Dallas Cnty. Tax Collector v. Andolina*,
   303 S.W.3d 926 (Tex. App.—Dallas 2010, no pet.) ...........................................50

*Devji v. Keller*,
   No. 03-02-00754-CV, 2003 WL 21705829 (Tex. App.—Austin July 24,
   2003, no pet.) .......................................................................................................50

*Double Ace, Inc. v. Pope*,
   190 S.W.3d 18 (Tex. App.—Amarillo 2005, no pet.) ........................................21

*Enos v. State*,
   889 S.W.2d 303 (Tex. Crim. App. 1994) ...........................................................36

*EOG Res., Inc. v. Hurt*,
   357 S.W.3d 144 (Tex. App.—Fort Worth 2011, pet. denied).......................30, 33

*Farmer v. Ben E. Keith Co.*,
   907 S.W.2d 495 (Tex. 1995) (per curiam) .........................................................42

*Fiess v. State Farm Lloyds*,
   202 S.W.3d 744 (Tex.2006)................................................................................22

*Finserv Casualty Corp. v. Transamerica Occidental Life Ins. Co.*,
   Case No. 2011-05238 (District Court —Harris County, Texas [165th
   Dist.] August 27, 2013)..................................................................................23, 1

*First Nat'l Bank of Edinburg v. Cameron Cnty.*,
   159 S.W.3d 109 (Tex. App.—Corpus Christi 2004, pet. denied) ......................22

*In re Foreman*,
   365 Ill. App. 3d 608, 850 N.E.2d 387 (Ill. App. Ct. 2006) ...........................36, 37

*Foreman v. Graham*,
   693 S.W.2d 774 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.)......................53

*Fox-Greenwald Sheet Metal Co. v. Markowitz Bros.*,
   452 F.2d 1346 (D.C. Cir. 1971).........................................................................37

*In re French Gardens, Ltd.*,
   58 B.R. 959 (Bankr. S.D. Tex. 1986) ................................................................50

*Frontier Logistics, L.P. v. Nat'l Prop. Holdings*,
   417 S.W.3d 656, 660 (Tex. App. – Corpus Christi 2013, pet. pending)............22

*In the Interest of G.D.H.*,
366 S.W.3d 766 (Tex. App.—Amarillo 2012, no pet.) .......................................22

*Ginn v. Texas Farmers Ins. Co.*,
1998 Tex. App. LEXIS 6355 (Tex. App.—Austin Oct. 15, 1998, no pet.) .......49

*Green Tree Servicing, LLC v. Woods*,
388 S.W.3d 785 (Tex. App.—Houston [1st Dist.] 2012, no pet.)......................38

*Green v. Safeco Life Ins. Co.*,
727 N.E.2d 393 (Ill. App. Ct. 2000) ................................................................37

*Grieve v. General American Life Ins. Co.*,
58 F. Supp. 2d 391 (D. Vt. 1999) .....................................................................37

*Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*,
793 S.W.2d 652 (Tex. 1990) (op. on reh'g) .....................................................41

*Guar. Fed. Sav. Bank* v. *Horseshoe Operating Co.*,
893 S.W. 2nd 652, 657-58 (Tex. 1990) .............................................................44

*Gulf Ins. Co. v. Burns Motors*,
22 S.W.3d 417 (Tex. 2000)................................................................................35

*Guynn v. Corpus Christi Bank and Trust*,
589 S.W.2d 764 (Tex. Civ. App.—Corpus Christi 1979) .................................20

*Heggy v. Am. Trading Employee Ret. Account Plan*,
123 S.W.3d 770 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).......47, 52

*Henderson v. Little*,
248 S.W.2d 759 (Tex. App.—Amarillo 1952, reh'g denied).............................34

*Henderson v. Roadway Express*,
720 N.E.2d 1108 (Ill. App. Ct. 1999) ...............................................................37

*Heritage Res., Inc. v. Anschutz Corp.*,
689 S.W.2d 952 (Tex. App.—El Paso 1985, writ ref'd n.r.e.) ..........................27

*Heritage Res., Inc. v. Nationsbank*,
939 S.W.2d 118 (Tex. 1996) .............................................................................35

*Hydro-Line Mfg. Co. v. Pulido*,
  674 S.W.2d 382 (Tex. App.—Corpus Christi 1984, reh'g denied)....................34

*Interstate Contracting Corp. v. City of Dallas*,
  135 S.W.3d 605 (Tex. 2004) .........................................................................39

*Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n.*,
  710 S.W.2d 551 (Tex. 1986) ........................................................................37

*J.G. Wentworth Originations, LLC v. Freelon*,
  2014 Tex. App. LEXIS 8797 (Tex. App.—Houston [1st Dist.] Aug. 12,
  2014, no pet.) .............................................................................................46

*J.G. Wentworth Originations, LLC v. Perez*,
  2014 Tex. App. LEXIS 8798 (Tex. App.—Houston [1st Dist.] Aug. 12,
  2014, no pet.) .............................................................................................46

*J.G. Wentworth S.S.C., Ltd. P'Ship v. Callahan*,
  649 N.W. 2d 695 (Wis. Ct. App. 2002)...........................................................37

*J.G. Wentworth v. Jones*,
  28 S.W.3d 309 (Ky. App. Ct. 2000) ...............................................25, 31, 32, 33

*Jenkins by Jenkins v. State of Mo.*,
  122 F.3d 588 (8th Cir. 1997), *reh'g vacated by* 133 F.3d 560 (8th Cir.
  1997) ..........................................................................................................24

*Johnson v. First Colony Life Ins. Co.*,
  26 F. Supp. 2d 1227 (C.D. Cal. 1998) ............................................................37

*Johnson v. Structured Asset Services*,
  148 S.W.3d 711 (Tex. App.—Dallas, 2004, no pet.) .........................................36

*Kanan v. Plantation Homeowner's Ass'n Inc.*,
  407 S.W.3d 320 (Tex. App.—Corpus Christi 2013, no pet.)...............................22

*In re Kaufman,*
  37 P.3d 845 (Okla. 2001).............................................................................37

*Lee Memorial Hosp. v. Elgin-Butler Brick Co.*,
  436 S.W.2d 354 (Tex. Civ. App.—Austin 1969, no writ) ............................49, 53

*Liberty Life Assur. Co. of Boston v. Stone Street Capital, Inc.*,
93 F. Supp. 2d 630 (D. Md. 2000)...................................................................37

*Liberty Nat'l Fire Ins. Co. v. Akin*,
927 S.W.2d 627 (Tex. 1996) ..........................................................................42

*Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*,
809 F. Supp. 2d 582 (N.D. Tex. 2011) ...........................................................40

*Lone Mountain Production Co. v. Natural Gas Pipeline Co. of Am.*,
710 F. Supp. 305 (D. Utah 1989)....................................................................40

*Lopez v. Munoz, Hockema & Reed*,
22 S.W.3d 857 (Tex. 2000)..............................................................................35

*Luse v. Union City Transfer*,
324 S.W.2d 935 (Tex. App.—Waco 1959, writ dism'd) ..................................45

*Marine Creek Partners, Ltd. v. Caldwell*,
926 S.W.2d 793 (Tex. App.—Fort Worth 1996, no writ) ................................30

*Martin v. Davis Constructors, Inc.*,
552 S.W.2d 873 (Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.)...........35

*Martinez v. Martinez*,
2010 Tex. App. LEXIS 6994 (Tex. App.—Corpus Christi Aug. 26, 2010,
pet. filed) ........................................................................................................47

*McKelvy v. Barber*,
381 S.W.2d 59 (Tex. 1964)..............................................................................20

*In re Nitz,*
739 N.E.2d 93 (Ill. App. Ct. 2000) .................................................................37

*Nobles v. Marcus*,
533 S.W.2d 923 (Tex. 1976) ...........................................................................39

*Olmos v. Pecan Grove Mun. Util. Dist.*,
857 S.W.2d 734 (Tex. App.—Houston [14th Dist.] 1993, no writ)....................52

*Petro Source Partners, Ltd. v. 3-B Rattlesnake Red (1990), Ltd.*,
905 S.W.2d 371 (Tex. App.—El Paso 1995, writ denied) ...............44, 45, 47, 49

*Piasecki v. Liberty Life Assur. Co. of Boston*,
  728 N.E.2d 71 (Ill. App. Ct. 2000) ...................................................................37

*Pilgrim Enterprises, Inc. v. Maryland Cas. Co.*,
  24 S.W.3d 488 (Tex. App.—Houston [1st Dist.] 2000, no pet.).........................42

*In re Rapid Settlements, Ltd.*,
  202 S.W.3d 456 (Tex. App.—Beaumont 2006, pet. denied). Here, the
  Rapid Order..................................................................................................24, 9

*Reef v. Mills Novelty Co.*,
  89 S.W.2d 210 (Tex. 1936).........................................................................36, 37

*RSL Funding LLC v. Everett*,
  519 B.R. 644, 2014 U.S. Dist. LEXIS 145747 (W.D. La. 2014) .................26, 27

*Rudolph v. ABC Pest Control, Inc.*,
  763 S.W.2d 930 (Tex. App.—San Antonio 1989, writ denied) .........................20

*Salazar v. San Benito Bank & Trust Co.*,
  730 S.W.2d 21 (Tex. App.—Corpus Christi 1987, no writ) ..............................52

*Security State Bank v. Shanley*,
  182 S.W.2d 136 (Tex. Civ. App.—San Antonio 1944, no writ).......................45

*Settlement Capital Corp. v. Allstate Life Insurance Co. (In re Jack)*,
  390 B.R. 307 (Bankr. S.D. Tex. 2008) .............................................................27

*Settlement Funding, LLC v. Garcia*,
  533 F. Supp. 2d 685 (W.D. Tex. 2006) .............................................................26

*Shafer Plumbing & Heating, Inc. v. Controlled Air, Inc.*,
  742 S.W.2d 717 (Tex. App.—San Antonio 1987, no writ)...............................42

*Sharyland Water Supply Corp. v. City of Alton*,
  354 S.W.3d 407 (Tex. 2011) .............................................................................30

*Sigmar v. Anderson*,
  212 S.W.3d 789 (Tex. App.—Austin 2006, no pet.).........................................50

*Singer Asset Fin. Co., LLC v. Continental Cas. Co.*,
  886 So. 2d 1004 (Fla. Dist. Ct. App. 2004)......................................................36

*South Texas Water Authority v. Lomas*,
223 S.W.3d 304 (Tex. 2007) ...................................................................29, 30

*Speedemissions, Inc. v. Gate*,
404 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2013, no pet.).........................34

*State Farm Life Ins. Co. v. Martinez*,
216 S.W.3d 799 (Tex. 2007) .................................................................................51

*Stine v. Stewart*,
80 S.W.3d 586 (Tex. 2002)..............................................................................29, 30

*Sw. Elec. Power Co. v. Grant*,
73 S.W.3d 211 (Tex. 2002)...................................................................................35

*Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*,
2014 U.S. App. LEXIS 24349 (5th Cir. Dec. 23, 2014)......................................43

*Tawes v. Barnes*,
340 S.W.3d 419 (Tex. 2011) ...........................................................................21, 30

*Texaco, Inc. v. LeFevre*,
610 S.W.2d 173 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ) .............45

*Texas Farmers Ins. v. Gerdes*,
880 S.W.2d 215 (Tex. App.—Fort Worth 1994, writ denied) ............................37

*United States v. Ray Thomas Gravel Co.*,
380 S.W.2d 576 (Tex. 1964) ................................................................................52

*Univ. of Tex. Med. Branch at Galveston v. Allan*,
777 S.W.2d 450 (Tex. App.—Houston [14th Dist.] 1989, no writ)....................40

*Voye v. Ragan*,
616 S.W.2d 673 (Tex. Civ. App.—Corpus Christi 1981) ...................................20

*Wagner v. Warnasch*,
295 S.W.2d 890 (Tex. 1956) ................................................................................23

*Walters v. Walters*,
298 S.E.2d 338 (N.C. 1983).................................................................................24

*Washington Square Fin. LLC v. RSL Funding, LLC*,
   418 S.W.3d 761 (Tex. App.—Houston [14[th] Dist.] 2013, pet. filed) .................21

*West v. Triple B Servs., LLP*,
   264 S.W.3d 440 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ...................21

*Windsor-Thomas Group, Inc. v. Parker*,
   782 So.2d 478 (Fla. Dist. Ct. App. 2001) .......................................................32

*Womack v. Berry*,
   291 S.W.2d 677 (Tex. 1956) ...........................................................................42

## STATUTES, RULES & REGULATIONS

Tex. Civ. Prac. & Rem. Code § 141.007(e)...............................................................36

Tex. R. App. P. Rule 33 .............................................................................................35

Tex. R. Civ. P. 41 ......................................................................................................41

Tex. R. Civ. P. 174(b) ...............................................................................................41

# RECORD REFERENCES

Record citations appearing as "CR" refer to the Original Clerk's Record filed in the First Court of Appeals on August 12, 2014.

Record citations appearing as "1st Supp. CR" refer to the 1st Supplemental Clerk's Record filed in the First Court of Appeals on October 27, 2014.

Record citations appearing as "2nd Supp. CR" refer to a second Supplemental Clerk's Record that was filed in the First Court of Appeals on December 12, 2014.[1]

Record citations appearing as "RR" refer to the Reporter's Record filed in the First Court of Appeals on December 10, 2013.

---

[1] This second Supplemental Clerk's Record, when filed, was identified as a "1st Supplemental Clerk's Record." However, it is actually the second supplemental record, the first one having been filed on October 27, 2014, and therefore, for clarity of citation reference, it is referred to herein as "2nd Supp. CR."

# STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case and Parties:* | RSL-3B-IL, Ltd. ("RSL") initiated this action for breach of contract and declaratory relief against The Prudential Insurance Company of America and Prudential Structured Settlement Company f/k/a Prudential Property and Casualty Insurance Company of Holmdel, New Jersey, based on a transaction between decedent Erica Adegoke and Rapid Settlements, Ltd.  RSL has no claim for breach of contract against the Prudential Defendants.<br><br>Olubumi Adegoke intervened in the case and subsequently nonsuited.  There were never any claims between Olubumi and the Prudential Defendants, and, following a final judgment, the trial court severed any claims between Olubumi and RSL from this matter. |
| *Trial Court* | The Honorable Dan Hinde, 269th District Court of Harris County, Texas |
| *Trial Court's Disposition:* | Trial court granted the Prudential Defendants' motion for directed verdict and, on March 18, 2014, entered a final judgment.<br><br>In an order dated May 28, 2014, the trial court denied RSL's Motion for New Trial.<br><br>In an order dated June 20, 2014, the trial court ordered Olubumi Adegoke's claims severed. |

# ISSUES PRESENTED

1.      Should the directed verdict in favor of the Prudential Defendants be affirmed, because RSL has failed to establish a breach of contract claim?

2.      Following entry of a final judgment, did the trial court properly sever Olubumi Adegoke's intervention and nonsuit against RSL from this matter?

3.      Should the jury award of attorneys' fees to the Prudential Defendants on their interpleader claim be affirmed?

MAY IT PLEASE THE COURT:

"How is it you're not having your cake and eat[ing] it, too, here," asked the trial court judge to plaintiff-appellant RSL-3B-IL, Ltd. ("RSL").[2] That is precisely what RSL has sought to do throughout this litigation. It is getting what it claims to have lost, *i.e.*, certain payments, but nevertheless insists it also has a breach of contract claim based on these same payments, despite the absence of either a breach or a contract.

RSL is trying to do what has never been recognized before – suing an annuity issuer and annuity owner for breach of contract based on an order for the transfer of structured settlement payments.[3] RSL has cited no precedent for its case. Indeed, a Texas court recently rejected a similar breach of contract claim that was based on a problematic court order in the structured settlement context.

---

[2] *See* RR, Vol. 4, p. 142.

[3] Plaintiff RSL-3B-IL, Ltd. is a "factoring company," which means that it purchases from consumers, in exchange for discounted lump-sum payments, streams of future settlement payments. Factoring companies have been preying on the structured settlement industry and its payees for a number of years. To protect structured settlement payees from being exploited by factoring companies, at least 47 states, including Texas, have enacted structured settlement protection acts ("SSPAs"), which require court approval before a factoring transaction can be effectuated. The SSPAs serve to regulate factoring transactions and do not automatically validate them. In this case, payee Erica Adegoke ("Adegoke") entered into a factoring transaction with Rapid Settlements, Ltd. ("Rapid"). RSL asserts it was obtained Adegoke's rights from Rapid by way of the court order approving the transfer of payments.

Moreover, RSL created the problem in the first place. It obtained a court order by its purported assignor directing appellees The Prudential Insurance Company of America ("Prudential") and Prudential Structured Settlement Company f/k/a Prudential Property and Casualty Insurance Company of Holmdel, New Jersey ("PSSC") (collectively, the "Prudential Defendants") to send certain annuity payments to RSL, despite the fact that RSL knew those payments were already scheduled to go to another factoring company pursuant to an earlier court order. Then, RSL refused to cooperate with the Prudential Defendants and other parties, who were attempting to rectify the problem of two different payment instructions on the same finite funds.

The Prudential Defendants were agreeable to fixing RSL's problem with a stipulation and amended order. Instead, however, RSL sued the Prudential Defendants for breach of contract, arguing that the court order obtained by its purported assignor gave RSL not only the right to the annuity payments, but also contract claims.

There are numerous problems with RSL's claim. First, the court order relied up on by RSL does not constitute a contract upon which RSL can sue for breach of contract. A court order does not have the requisite elements of a contract. However, even if the order could constitute a contract, the breach of contract claim still fails.

Case law makes clear that an annuitant, like Adegoke, has no enforceable interest in the annuity, and, therefore, neither does anyone purporting to make a claim through her, like RSL. Adegoke was a mere incidental third-party beneficiary of the annuity, which means she had no rights capable of enforcement. Furthermore, because Adegoke did not own the annuity, she also lacked the ability to assign or transfer the annuity payments. Prudential Defendants have exclusive control over the Annuity and any payment directions. Moreover, Adegoke only purportedly assigned annuity payments, not the annuity contract. Adegoke had no right to assign the contract, and if she could not and did not assign the contract, then a breach of contract claim must fail. While RSL attempts to divert attention away from these problems by pointing to other contracts, RSL failed to prove that those contracts were assigned to RSL and that the Prudential Defendants were parties.

RSL's claim is not recognized by the courts in Texas or elsewhere, and the Court should not allow such a claim to succeed against innocent stakeholders like the Prudential Defendants, who have interpleaded the funds at issue in the face of conflicting orders as to disbursement of those funds. RSL can collect those funds, and this matter should be over. The Court should affirm the directed verdict in favor of the Prudential Defendants and against RSL, as well as the jury award of attorneys' fees to the interpleaders-Prudential Defendants and the order severing

- 3 -

this matter from RSL's dispute with Adegoke's estate distributee.  For the reasons set forth herein, the trial court's orders should be affirmed and RSL's appeal should be dismissed.

**I.**
**STATEMENT OF FACTS**

Because RSL has omitted key facts relating to this appeal, it is necessary for the Prudential Defendants to provide a statement of facts.

**A.** **The Underlying Settlement Agreement, the Qualified Assignment, and the Annuity**

On or about November 18, 1993, Adegoke entered into a settlement agreement with a tort defendant to resolve a personal injury claim (the "Settlement Agreement"), which provided for certain monthly and lump sum payments.[4]  The Prudential Defendants were not parties to the Settlement Agreement.  Under the Settlement Agreement, Adegoke had no right to vary the schedule of the proposed payments, and she could not sell, transfer, assign, or encumber the payments.[5]

---

[4] The Settlement Agreement provided for Adegoke to receive the following payments: (i) monthly payments of $1,000.00, beginning on November 5, 2003, and continuing through October 5, 2023 (with a three percent increase every November 5th); (ii) one lump sum payment of $15,000.00 due on September 21, 2001; (iii) one lump sum payment of $20,000.00 due on September 21, 2006; (iv) one lump sum payment of $30,000.00 due on September 21, 2011; and (v) one lump sum payment of $75,000.00 due on September 21, 2016.

[5] The Settlement Agreement provided:

(Continued)

- 4 -

The Settlement Agreement is also clear that Adegoke would not (and did not) have any enforceable interest in any annuity purchased by the tort defendant or its assignee to fund the payment obligation. Specifically, the Settlement Agreement provided that, for any annuity purchased, Prudential "*may*" make payments to Adegoke for PSSC's "*convenience*"; Adegoke "*shall not…have any control of the investment of funds* from which payments detailed in Exhibit A, number 2 are made"; and "All rights of ownership and control of such annuity shall be vested in [PSSC]." *See* 1st Supp. CR 424-25 (emphasis added); 1st Supp. CR 423-425 (emphases added); 2nd Supp. CR 275-76.

---

(Continued)

It is further UNDERSTOOD AND AGREED by the parties hereto that the recipient [*i.e*., Erica Adegoke] of the future payments detailed in Exhibit A, number 2 to this document, *shall not have the right to accelerate said future payments at any time or vary in any respect the payment schedules* detailed in Exhibit A, number 2; *receive the present discounted value of future payments* detailed in Exhibit A, number 2; *have any control of the investment of funds* from which payments detailed in Exhibit A, number 2 are made; *have any right to increase or decrease the monthly payments* detailed in Exhibit A, number 2; *change or modify the manner, mode or method of making any payments* detailed in Exhibit A, number 2.
*       *       *
It is FURTHER AGREED that the payments detailed in Exhibit A, number 2 to be received by ERICA ADEGOKE *are not subject in any manner to anticipation, alienation, sale, transfer, assignment, or encumbrance* by ERICA ADEGOKE, her heirs, personal representatives, successors and assigns, or any other person or entity.

*See* 1st Supp. CR 423-425 (emphases added); 2nd Supp. CR 275-76.

On or about September 30, 1993, the tort defendant entered into a qualified assignment (the "Qualified Assignment") with PSSC. Similar to the Settlement Agreement, the Qualified Assignment is clear that Adegoke would not have any enforceable interest in any annuity purchased, stating, "[a]ll rights of ownership and control of such annuity contract shall be and remain *vested in the Assignee [PSSC] exclusively*," and that PSSC's payment directions "shall be *solely for [PSSC]'s convenience* and shall not provide [Adegoke] or any payee with any rights of ownership or control over the [Annuity] or against the Annuity Issuer. " *See* RR, Vol. 6, Plaintiff's Ex. 1, ¶¶ 6-7 (emphasis added).[6]

On or about September 30, 1993, PSSC purchased annuity contract no. A9901070 (the "Annuity"). *See* RR, Vol. 6, Plaintiff's Ex. 2. PSSC is the owner of the Annuity, and Prudential is the issuer of the Annuity. *See id.* Adegoke (now deceased) was merely the annuitant. *See id.*

In addition to certain lump sum payments, the Annuity entitled PSSC to the following monthly payments:

- a. Monthly payments of $1,000.00 each, starting on November 5, 1993, with 12 payments certain; and

---

[6] The Qualified Assignment further states, "[n]one of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered. RR, Vol. 6, Plaintiff's Ex. 1, ¶ 3.

- b.  Monthly payments starting on November 5, 1994 and for as long after that as the annuitant lives, such that the amount of each payment will be 103% of the same month's payment in the prior contract year, with 228 payments certain.  Payments end with the last one due before the annuitant's death if such death occurs after all the payments certain have been paid.

*See id.* at "Payment Schedule."[7]

The Annuity clearly states, "while the annuitant is living[,] ***the owner alone [i.e., PSSC] is entitled to (a) any contract benefit***, and (b) the exercise of any right and privilege granted by the contract or by us [Prudential]."  *See* RR, Vol. 6, Plaintiff's Ex. 1, p. 2 (emphasis added).  The rights of the owner, PSSC, "include but are not limited to the right to designate or change the person or entity to whom annuity payments will be made."  *Id*.

## B.  The Factoring Transaction with Settlement Capital Corporation

Adegoke subsequently entered into a factoring transaction with Settlement Capital Corporation ("SCC"), a factoring company, to assign certain Periodic Payments to SCC.  Pursuant to a January 7, 2003 order (the "SCC Order") from the County Civil Court for Harris County, Texas, the court approved the transfer of certain Periodic Payments to SCC in accordance with the Texas Structured

---

[7] These payments and the lump sum payments are collectively, the "Periodic Payments."

Settlement Protection Act, Tex. Civ. Prac. & Rem. Code §§ 141.001-.007 (the

"Act").[8]  *See* RR, Vol. 6, Plaintiff's Ex. 4.

**Importantly, the SCC Order required the Prudential Defendants to send the full amount of each monthly Periodic Payment to SCC**, ordering that the Prudential Defendants were "directed to *deliver and make payable* to Transferee Settlement Capital Corporation" the full amount of each monthly Periodic Payment.  *See* RR, Vol. 6, Plaintiff's Ex. 4, p. 3.[9]  SCC was then ordered to remit to the unassigned portion of each Periodic Payment to Adegoke as part of a servicing agreement.  *See id*.  However, the SCC Order is clear that the **full amount** of each Periodic Payment is to be "**deliver[ed] and [made] payable to**" SCC.  *See id*. (emphasis added).

The SCC Order also provided that, by making the aforementioned payments to SCC, the Prudential Defendants "will be discharged from all liability for these

---

[8] Specifically: (i) monthly payments of $900.00, beginning on February 5, 2003, and continuing through May 5, 2011; (ii) monthly payments of $950.00, beginning on June 5, 2011, and continuing through October 5, 2013; (iii) one lump sum payment of $20,000.00 due on September 21, 2006; and (iv) one lump sum payment of $30,000.00 due on September 21, 2011 .

[9] Specifically: one hundred monthly payments of $1,304.75, which increases 3% each Nov. 5th, commencing Feb. 5, 2003 and continuing on the 5th of each month thereafter through and including May 5, 2011; twenty-nine monthly payments of $1,652.82, , which increases 3% each Nov. 5th, commencing June 5, 2011 and continuing on the 5th of each month thereafter through and including October 5, 2013; lump sum payment of $20,000 due on September 21, 2006; and lump sum payment of $30,000 due on September 21, 2011.

Periodic Payments due Payee under the Annuity." *See id.* at pp. 3-4. Finally, the SCC Order stated "[t]his Order in no way modifies or negates the ownership or control over the underlying annuity contract by Annuity Issuer [Prudential] or Structured Settlement Obligor [PSSC]." *Id.* at p. 4.

**C.    The 2003 Factoring Transaction with Rapid Settlements, Ltd. and the Conflicting Order**

On or about October 13, 2003, Adegoke then entered into another factoring transaction and purchase agreement (the "Transfer Agreement") with Rapid Settlements, Ltd. ("Rapid") to sell and assign certain of the Annuity payments to Rapid. *See* RR, Vol. 6, Plaintiff's Ex. 5. Pursuant to that agreement between *Adegoke and Rapid*, Adegoke agreed to transfer certain Annuity payments to *Rapid. See* RR, Vol. 6, Plaintiff's Ex. 5, p. 2, ¶ 1. Rapid is not a party to this litigation. The Prudential Defendants were not a party to the Transfer Agreement. *See id.*

Under the Transfer Agreement, the proposed "Assigned Payments" to be transferred were identified as follows:

> The following portion of the ***monthly annuity payments*** originally in the amount of $1,000.00 per month commencing on November 5, 1993 through October 5, 2013 and increasing 3% per annum every November 5th (presently as of the date hereof in the amount of $1,303.77 per month due on November 5, 2003 and on the 5th of each month thereafter): for the period of November 5, 2003 through May 5, 2011, all monthly payments less $900.00 per month (such $900.00 per month not subject to any increase) previously assigned (the Assigned Payments being $443.92 per month as of November 5, 2003, subject

to further increase); (ii) for the period of June 5, 2011 through October 5, 2013, all monthly payments less $950.00 per month (such $950.00 per month not subject to any increase) previously assigned ($443.92 per month as of November 5, 2003 subject to further increase); and (iii) one (1) lump sum payment in the amount of $75,000.00 due on September 21, 2016.  Following this transfer Assignor shall no longer have any financial interest in the Assigned Payments or in the payments due under the *Annuity Contract* [No. A990 1070] because all of the Periodic Payments due under the *Annuity Contract* will have been assigned, transferred and sold.

*See* RR, Vol. 6, Plaintiff's Ex. 5, p. 1 (emphasis added).

The Prudential Defendants notified Rapid that each monthly Periodic Payment through and including the Periodic Payment due on Oct. 5, 2013, was already scheduled to be made to SCC.  *See* RR, Vol. 6, Plaintiff's Ex. 7. Therefore, Rapid knew and was aware that Prudential was already under an obligation to make the Periodic Payments to SCC, that the Prudential Defendants were not scheduled to make such payments to Adegoke, and that if Rapid wanted any such payments to be sent to it, then it should seek them from SCC, not the Prudential Defendants.  *See id.*; *see also* RR, Vol. 3, p. 185 (Rapid representative admitting to receiving letter admitted as Plaintiff's Exhibit 7).[10]

---

[10] Rapid and RSL failed to notify the court that the payments at issue were already the subject of a prior court order, *i.e.,* the SCC Order.  They also failed to notify the court that, despite the language included in the Rapid Order, the Prudential Defendants had notified Rapid that the proposed assigned payments had been previously "encumbered, or other wise [sic] pledged…" *See* RR, Vol. 6, Plaintiff's Ex. 8; *see also* RR, Vol. 3, p. 185.

Pursuant to a November 13, 2003 order (the "Rapid Order") from the County Civil Court for Harris County, Texas, pursuant to the Act, the court ordered the Prudential Defendants to make the Annuity payments to RSL, specifically identifying the "Assigned Payments" as the Annuity payments:

> It is FURTHER ORDERED that Annuity Owner and Annuity Issuer [*i.e.*, PSSC and Prudential] are hereby directed to deliver and make payable to Transferee, its successors and/or assigns, the following payments under the **Annuity Contract No. A9901070** with Payee, regardless of whether Payee is living:
>
> > The following portion of the ***monthly annuity payments*** originally in the amount of $1,000.00 per month commencing on November 5, 1993 through October 5, 2013 and increasing 3% per annum every November 5th (presently as of the date hereof in the amount of $1,303.77 per month due on November 5, 2003 and on the 5th of each month thereafter): for the period of November 5, 2003 through May 5, 2011, all monthly payments less $900.00 per month (such $900.00 per month not subject to any increase) previously assigned (the Assigned Payments being $443.92 per month as of November 5, 2003, subject to further increase); (ii) for the period of June 5, 2011 through October 5, 2013, all monthly payments less $950.00 per month (such $950.00 per month not subject to any increase) previously assigned ($443.92 per month as of November 5, 2003 subject to further increase); and (iii) one (1) lump sum payment in the amount of $75,000.00 due on September 21, 2016. Following this transfer Assignor shall no longer have any financial interest in the Assigned Payments or in the payments due under the ***Annuity Contract*** [No. A990 1070] because all of the Periodic Payments due under the ***Annuity Contract*** will have been assigned, transferred and sold.
>
> (The "Assigned Payments") which is either currently due or to become due to Payee, as it becomes due.

*See* RR, Vol. 6, Plaintiff's Ex. 8, pp. 3-4 (emphasis added). The Rapid Order also states "[t]his Order in no way modifies or negates the ownership or control over the underlying annuity contract by Annuity Issuer [Prudential] or Annuity Owner [PSSC]." *See* RR, Vol. 6, Plaintiff's Ex. 8, p. 5.

The Assigned Payments were to be "made payable to and delivered to Transferee at the following address: RSL-3B-IL-Ltd., c/o Rapid Settlements, Ltd…." *Id*. at p. 4. The Rapid Order is the only document purporting to assign anything to RSL.

Contrary to the assertions made by RSL, the SCC Order and Rapid Order stand in direct conflict with respect to whom the Prudential Defendants are required to make the assigned Periodic Payments. The SCC Order requires the Prudential Defendants to make payable and deliver the entire amount of the assigned Periodic Payments to SCC, while the Rapid Order purports to direct the Prudential Defendants to send part of those same Periodic Payments directly to RSL. *Compare* RR, Vol. 6, Plaintiff's Ex. 4 *with* RR, Vol. 6, Plaintiff's Ex. 8. Both orders could not be followed at the same time.

Due to the conflict between the SCC Order and the Rapid Order, Prudential suspended payment of the Periodic Payments. *See* 1st Supp. CR 32-34 at ¶¶ 35,

45.  In an attempt to resolve the conflict, Prudential, PSSC, SCC, Rapid, and RSL entered into a stipulation (the "Stipulation").[11]  1st Supp. CR 32-34, 66-114. Pursuant to the Stipulation, Rapid and RSL agreed to obtain Adegoke's signature on the Stipulation, vacate the Rapid Order, and obtain an Amended Order of Transfer *Nunc Pro Tunc* (the "Amended Rapid Order").  *See id*.  Prudential would then be relieved of the obligation to send the entire amount of the Periodic Payments to SCC.

However, RSL and Rapid failed to satisfy their obligations under the Stipulation.  1st Supp. CR 33 at ¶ 39.  Adegoke's signature was never obtained, the Rapid Order was never vacated, and the Amended Rapid Order was never obtained.  Additional efforts were made to resolve the conflict, including a proposed addendum to the Stipulation (the "Addendum").  While SCC, Prudential, and PSSC were all in agreement with the terms of the Addendum, Rapid and RSL would not agree and were unwilling to cooperate.  Thus, the conflict between the two orders remained.  1st Supp. CR 32-34, 66-114.

---

[11] The details regarding the Stipulation and Addendum to the Stipulation were set forth in the Prudential Defendants' claim for interpleader.  *See* 1st Supp. CR 24-114; *see also* RR, Vol. 4, pp. 152-167.

- 13 -

**D.     RSL's Petition and the Prudential Defendants' Interpleader**

Instead of resolving the conflict that RSL itself created, RSL filed a petition against the Prudential Defendants and SCC on February 12, 2012.  *See* 1st Supp. CR 8-23.  RSL asserted a breach of contract claim against the Prudential Defendants and sought declaratory relief.  *See id.*

As set forth in RSL's petition, RSL asserted that it obtained from "Adegoke the rights to annuity payments (the 'Annuity Payments') via a final non-appealable court order ('[Rapid] Order')"; that it possessed the "right to receive the proceeds due under the Annuity contract as required by the [Rapid] Order"; and that the Prudential Defendants breached their agreement by "refusing to make the Annuity Payments as set forth by the [Rapid] Order."  1st Supp. CR 10-13 at ¶¶ 9, 18-19.

Because the Prudential Defendants faced a conflict as to which entity to send the payments under the Annuity, the Prudential Defendants filed their Answer to Plaintiff's Original Petition and asserted a counterclaim for Interpleader.  *See* 1st Supp. CR 24-114.  In the Interpleader, the Prudential Defendants stated:

- "The SCC Order and the Rapid Order are in conflict with regards to whom Prudential is required to make the assigned Periodic Payments. The SCC Order, which includes a Servicing Arrangement, directs Prudential to send the entire amount of the relevant Periodic Payments to SCC.  Conversely, the Rapid Order directs Prudential to send part of the same Periodic Payments directly to 3B [*i.e.*, RSL-3B]."  *See* 1st Supp. CR 32 at ¶ 34.

- Based on the conflict between the SCC Order and the Rapid Order, "Prudential and PSSC are at risk of suffering competing claims and

- 14 -

violating the SCC Order and the Rapid Order." *See* 1st Supp. CR 34 at ¶ 45.

- The Prudential Defendants "seek certainty regarding the parties' respective rights to receive the Payments at Issue." *See* 1st Supp. CR 34 at ¶ 46.

- The Prudential Defendants "are innocent stakeholders and claim no title or interest in the Payments at Issue." *See* 1st Supp. CR 35 at ¶ 48.

- "Prudential and PSSC are willing and able to deposit the Payments at Issue into the registry of this court, or to continue to hold the Payments at Issue, pending direction from this court as to the proper payee of the Payments at Issue." *See* 1st Supp. CR 35 at ¶ 50.

On January 25, 2013, in granting SCC's motion for summary judgment, the Court recognized that the Prudential Defendants had previously interpleaded the payments at issue. *See* 2nd Supp. CR 105-110, p. 2 ("Settlement Capital is entitled to received, collect, and recover certain of the monies, funds, and ***payments that were interpleaded by the Prudential Defendants*** in this case (the 'Interpleaded Funds')" (emphasis added)).

## E.    The Trial and the Final Judgment

Trial started on Monday, October 28, 2013.  On October 29, 2013, the trial court granted the Prudential Defendants' motion for directed verdict.  On October 30, 2013, the case went to the jury on the issue of the Prudential Defendants' attorneys' fees only.  *See* CR 410-416.  The jury made a finding that the Prudential Defendants should be awarded attorneys' fees in the amount of $8,860.95.  *Id.*

- 15 -

In an interlocutory judgment dated February 4, 2014, the trial court rendered judgment for the Prudential Defendants/Interpleaders. *See* 2nd Supp. CR 313-314. The order was interlocutory because it did not address disbursement of the funds deposited by the Prudential Defendants in the court registry. 2nd Supp. CR 314. However, there was no dispute over RSL's ability to move for disbursement of the funds, as "all parties agreed at multiple hearings before trial that there is no longer any dispute as to who should receive the interpleaded funds," *i.e.*, RSL. *See* 2nd Supp. CR 313.

On February 25, 2014, the Prudential Defendants filed their First Amended Motion to Sign Judgment, which attached the proposed final judgment (the "Final Judgment"). 2nd Supp. CR 309 -321. RSL did not file any objection to the Court's February 4, 2014 Order to prepare the final judgment or file any response to the Prudential Defendants' First Amended Motion to Sign Judgment.

On March 18, 2014, the Court entered the Final Judgment. CR 4-6. The Court stated, "[t]he parties are not in dispute that Plaintiff RSL-3B should receive the interpleaded funds." CR 5. The Court ordered that the Prudential Defendants are entitled to their attorneys' fees, interest, and costs, which amount was to be deducted from the interpleaded funds in the registry of the court, and that RSL-3B can recover the remaining interpleader funds after the aforementioned amount was deducted and provided to the Prudential Defendants/Interpleaders. *See id*. Finally,

the Final Judgment provides, "This judgment is final, disposes of all claims and all parties, and is appealable.  All other relief requested by any party and not expressly granted herein or in the SCC Summary Judgment is denied."  CR 6.

## F.    Olubumi Adegoke's Intervention and Nonsuit, and the Court's Severance

Adegoke entered into the transaction with Rapid back in 2003.  RR, Vol. 6, Plaintiff's Ex. 5.  She died in 2011, without ever having been fully paid for the transfer of the payments to Rapid.  *See* 1st Supp. CR 612-614; *see* also 1st Supp. CR 599-600.  For over a decade, Rapid has failed to remit monies owed under the Transfer Agreement.  *See* 1st Supp. CR 612-614.

On or about August 9, 2013, Olubumi Adegoke ("Olubumi") intervened as Adegoke's sole heir and sole estate distributee of Adegoke's estate.  *See* 1st Supp. CR  618-622.  Olubumi subsequently nonsuited.  On October 7, 2013, the trial court ordered that Olubumi's non-suit was accepted and that all claims brought by Olubumi were dismissed without prejudice.  1st Supp. CR 917-918.[12]

Olubumi did not participate in the trial and has not been involved in this matter's proceedings since she non-suited.  She never asserted any claims against

_____

[12] RSL sought to force Olubumi into arbitration based on another factoring transaction between Olubumi and another factoring company.  It does not appear that RSL fully proceeded with the arbitration proceedings, despite seeking a stay of the trial while it sought to arbitrate and after having its interlocutory appeal dismissed.  *See* 2nd Supp. CR 456.

the Prudential Defendants, and the Prudential Defendants never asserted any claims against her.

On May 28, 2014, in denying RSL's motion for new trial, the trial court ordered the parties to show cause why Olubumi's Petition in Intervention and Nonsuit, RSL's motion to compel Olubumi to arbitration, and the trial court's order compelling Olubumi to arbitrate should not be severed into a separate cause. CR 164. RSL objected to the severance, even though nothing remained as between RSL and the Prudential Defendants. *See* 2nd Supp. CR 423-434. On June 13, 2014, the trial court ordered severance. 1st Supp. CR 1311-1313.

## II.
## SUMMARY OF THE ARGUMENT

First, RSL has failed to establish its breach of contract claim. The Rapid Order, under which RSL purports to have been assigned the rights to the Annuity payments, cannot constitute a contract. Moreover, the Annuity contract was not owned by Adegoke, and without such ownership rights, she did not have the right to direct or assign the payments. The case law is also clear that she was an incidental, not intended, third-party beneficiary without the right to sue on the contract. Adegoke had no enforceable interest in the Annuity, and therefore, neither did RSL. Furthermore, to the extent RSL attempts to rely on the Settlement Agreement or Qualified Assignment, these contracts were not assigned to RSL; the Prudential Defendants were not parties to the Settlement Agreement; and all the

- 18 -

underlying contracts contain anti-assignment language prohibiting the payments from being assigned. The directed verdict in favor of the Prudential Defendant should be affirmed.

Second, when the trial court ordered severance, nothing remained to be disputed between RSL and the Prudential Defendants, and there was never any dispute between Olubumi and the Prudential Defendants. The trial court also ordered that RSL could recover the interpleaded funds (less the attorneys' fee award and interest); if anything remains to be disputed between RSL and Olubumi, the Prudential Defendants have no involvement. While it is questionable whether RSL or Olubumi are actually pursuing any claims against each other, they were already ordered to arbitration without the Prudential Defendants and, thus, can continue on without Prudential Defendants. The Court should affirm the severance.

Finally, the Prudential Defendants properly interpleaded, and the trial court determined that the Prudential Defendants interpleaded the funds. Texas law allows an interpleading party to recover its attorneys' fees from the interpleaded funds, which the jury awarded to the Prudential Defendants based on the evidence submitted. The award of the fees and interest should be affirmed.

## III.
## ARGUMENT

**A.** **Standard of Review for Appeal of Directed Verdict**

An instructed verdict is proper when (1) the opponent's pleadings are insufficient to support a judgment; (2) the evidence conclusively proves a fact that established a party's right to judgment as a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Rudolph v. ABC Pest Control, Inc.*, 763 S.W.2d 930, 932 (Tex. App.—San Antonio 1989, writ denied).

The burden is on the appellant "to prove that the peremptory instruction in favor of [the] appellee cannot be sustained on ***any*** of the grounds set out in the motion for instructed verdict of that appellee." *Voye v. Ragan*, 616 S.W.2d 673, 674 (Tex. Civ. App.—Corpus Christi 1981) (emphasis added) (citing *McKelvy v. Barber*, 381 S.W.2d 59 (Tex. 1964)). Therefore, to obtain a reversal, the appellant must establish "that the contentions in the motions for instructed verdict cannot serve as a basis for granting such motions." *Id.* (citing *Guynn v. Corpus Christi Bank and Trust*, 589 S.W.2d 764, 770 (Tex. Civ. App.—Corpus Christi 1979)(dism'd Mar. 26,1980)).

To the extent that an appellant is able to meet this burden, the Court must still look beyond the "contentions in the motions" and, on review, "must affirm an instructed verdict if the record discloses a ground that establishes, as a matter of

law, the movant was entitled to judgment, ***even though the ground was not embodied in the motion for instructed verdict***." *Double Ace, Inc. v. Pope*, 190 S.W.3d 18, 26 (Tex. App.—Amarillo 2005, no pet.) (emphasis added).[13]

Appellate courts will apply a *de novo* standard of review to issues involving the construction of an unambiguous contract. *See Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011). The primary concern in interpreting a contract is to ascertain and to give effect to the intentions of the parties as expressed in the instrument. *Washington Square Fin. LLC v. RSL Funding, LLC*, 418 S.W.3d 761, 767 (Tex. App.—Houston [14th Dist.] 2013, pet. filed).

**B.** **RSL's Breach of Contract Claim Fails, and the Court Should Affirm the Directed Verdict.**

RSL's claim against the Prudential Defendants is for breach of contract. To recover for breach of contract, RSL must establish (i) that a valid contract existed between RSL and the Prudential Defendants, (ii) that RSL tendered performance or is excused from doing so, (iii) that the Prudential Defendants breached the contract's terms, and (iv) damages sustained as a result of the Prudential Defendants' breach. *See e.g., West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446

---

[13] For the Prudential Defendants' motion for directed verdict and motions for summary judgment, *see* 2nd Supp. CR 275-300; 1st Supp. CR 321-405, 509-614; 2nd Supp. CR 117-151, 164-259.

(Tex. App.—Houston [14th Dist.] 2008, no pet.).  Further, in order to have a valid contract, RSL must establish: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding."  *First Nat'l Bank of Edinburg v. Cameron Cnty.*, 159 S.W.3d 109, 112 (Tex. App.—Corpus Christi 2004, pet. denied).

RSL has no enforceable, legal contract with the Prudential Defendants.  A court cannot create a contract where none exists.  *Kanan v. Plantation Homeowner's Ass'n Inc.*, 407 S.W.3d 320, 333 (Tex. App.—Corpus Christi 2013, no pet.).[14]  Without a contract, it is axiomatic that there can be no breach of contract.

### 1. The Rapid Order is Not a Contract with the Prudential Defendants.

For its breach of contract claim, RSL has asserted that it obtained contract rights against the Prudential Defendants by way of the Rapid Order.  1st Supp. CR

---

[14] Traditional principles of contract law, including the rules of contract interpretation, prohibit courts of equity from rewriting a current contract or creating a new contract between two private parties.  *See* 25 Williston on Contracts § 67:30 (4th ed.2006).  Texas courts have consistently upheld these principles.  *See, e.g.*, *In the Interest of G.D.H.*, 366 S.W.3d 766, 770 (Tex. App.—Amarillo 2012, no pet.) ("A court cannot make contracts for the litigants appearing before it"); *Am. Zurich Ins. Co. v. Barker Roofing, L.P.*, 387 S.W.3d 54, 60 (Tex. App.—Amarillo 2012, no pet.) (quoting *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 753 (Tex.2006); *see also Frontier Logistics, L.P. v. Nat'l Prop. Holdings*, L.P., 417 S.W.3d 656, 660 (Tex. App.—Houston [14th Dist.] 2013, pet. filed).

10-13 at ¶¶ 9, 18; Appellant's Brief, p. 29. However, the Rapid Order cannot be the basis for a breach of contract claim.

A recent Texas court case is on point on this issue. In *Finserv Casualty Corp. v. Transamerica Occidental Life Ins. Co*., in the 165th Judicial District in the District Court of Harris County, Texas, on a factoring company's breach of contract action against the annuity company, the court first rejected the argument that the factoring company stood in the shoes of the payees (like Adegoke), and further held that annuity company ***could not be "held contractually liable for confusing or inaccurate court orders, which require a trip to the courthouse to clarify*.**" *Finserv Casualty Corp. v. Transamerica Occidental Life Ins. Co*., Case No. 2011-05238 (District Court —Harris County, Texas [165th Dist.] August 27, 2013) (emphasis added).[15] The same result is demanded here.

Furthermore, Texas and other jurisdictions have repeatedly recognized that court orders cannot constitute contracts, as they do not meet the requisites for the creation of a contract. *Wagner v. Warnasch*, 295 S.W.2d 890, 893 (Tex. 1956) (agreed judgment is not a contract and contract law does not apply to its enforcement; reversing court of appeals decision treating consent judgment as

---

[15] A copy of this case is attached hereto as Exhibit A.

contract); *Boston Prop. Exch. Transfer Co. v. Iantosca*, 834 F. Supp. 2d 4, 8 (D. Mass. 2011) (rejecting claim that court order constituted contract because there was no mutual assent or voluntary conferral of benefit); *Cavadi v. Bank of Am.*, 2008 DNH 66, 2008 U.S. Dist. LEXIS 26389, *7-8 (D.N.H. 2008) ("court order is a public act by the court issued in its exercise of the judicial power, not a private agreement between the court and the party bound"); *see also Jenkins by Jenkins v. State of Mo.*, 122 F.3d 588, 603-04 n.11 (8th Cir. 1997), *reh'g vacated by* 133 F.3d 560 (8th Cir. 1997) (rejecting characterization of district court's order as contract). *Cf. In re All Trac Transp., Inc.*, 306 B.R. 859, 913 (Bankr. N.D. Tex. 2004) (noting that court-ordered adequate protection payments do not create contractual relationship between debtor and secured creditor); *Bill Nolan Livestock, Inc. v. Simpson*, 402 So. 2d 214, 217 (La. Ct. App. 1981) (holding that where attorney-client relationship is only based upon court's order, there is no contractual relationship between attorney and client); *Walters v. Walters*, 298 S.E.2d 338, 342 (N.C. 1983) (approved agreement to be treated as court-ordered judgment, not contract).[16]

---

[16] If RSL had a problem concerning the Rapid Order, Texas case law specifically provides that the filing of application for approval of a structured settlement transfer agreement invokes that trial court's jurisdiction, and the trial court thereafter possesses plenary power over the controversy and can take actions necessary to protect the jurisdiction. *In re Rapid Settlements, Ltd.*, 202 S.W.3d 456, 462 (Tex. App.—Beaumont 2006, pet. denied). Here, the Rapid Order

(Continued)

The Rapid Order is not a private agreement between any of the parties, and RSL may not base its breach of contract claim on the Rapid Order. Seeking contractual damages for a violation of an imaginary covenant is not the appropriate method for dealing with a party's alleged violation of a court order. Therefore, the breach of contract claim fails, and the directed verdict should be affirmed.

### 2. Adegoke Had No Rights in the Annuity to Assign.

Even assuming *arguendo* that RSL could establish a breach of contract claim based on the Rapid Order, the Rapid Order only purportedly assigned Adegoke's rights to the Annuity payments. However, Adegoke had no rights in the Annuity contract susceptible of assignment.

Courts have consistently recognized that payees like Adegoke have no ownership rights in the Annuity and that there cannot be enforcement of any purported assignment of such payments due thereunder. *See J.G. Wentworth v. Jones*, 28 S.W.3d 309, 313-14 (Ky. App. Ct. 2000) (where insurer, in order to fund payments owed under a structured settlement agreement, agreed to fund payments by purchase of annuity, payee could not assign such payments funded from the

---

(Continued)

was signed by Judge Cynthia Crowe in the Civil County Court of Harris County, Texas, Court at Law No. 4. *See* RR, Vol. 6, Plaintiff's Ex. 8. Judge Crowe in the Civil County Court retained jurisdiction to enforce the orders issued in her court, and if RSL had an issue with the Rapid Order, it should have brought the matter before Judge Crowe.

annuity because the annuitant had no ownership interest in the annuity itself; in rejecting the factoring company's argument that the payee owned the rights to receive the periodic payments and thus was entitled to assign such rights, the court found that the structured settlement agreement and annuity "render[ed] the payees incidental third-party beneficiaries who retained none of the incidents or accoutrements of ownership in the annuities" and, therefore, the payees "had no interest susceptible of assignment"); *see also Settlement Funding, LLC v. Garcia*, 533 F. Supp. 2d 685, 694 (W.D. Tex. 2006) (holding that although the structured settlement recipient was the named payee under the annuity, the payee had no rights in the annuity that he could transfer because the annuity had been purchased and was owned by the structured settlement obligor, the United States, and not by the payee; "[annuity payee] Garcia was not a party to this annuity contract. *Thus, Garcia did not acquire any rights to control the payments made pursuant to the annuity contract*" (emphasis added)); *Allstate Ins. Co. v. American Bankers Ins. Co. of Florida*, 882 F.2d 856, 859 (4th Cir. 1989) ("axiomatic that one may not sell, assign or hypothecate that which he does not own"; holding that payee could not enforce assignment of his rights to future payments against annuity precisely because he had no legal rights to that contract).

Indeed, the court in *RSL Funding LLC v. Everett*, 519 B.R. 644, 2014 U.S. Dist. LEXIS 145747 (W.D. La. 2014), recently came to the same conclusion

relying on and applying Texas law. In *Everett*, the annuitant had purportedly assigned annuity payments to an RSL entity, but the annuity was owned by Pruco Assignment Company and Everett was the mere annuitant under the annuity, like Adegoke. The court affirmed the bankruptcy court's decision, which had concluded that the **assignment agreement was invalid, because the "assignment between Everett and RSL was an attempt to assign rights under the Annuity Contract that were held by PRUCO rather than Everett**." *Everett*, 2014 U.S. Dist. LEXIS 145747 at *12 (emphasis added).

The court in *Everett* also relied heavily on *Settlement Capital Corp. v. Allstate Life Insurance Co. (In re Jack)*, 390 B.R. 307 (Bankr. S.D. Tex. 2008), which applied Texas law. In *In re Jack*, like here, the annuity contract stated that the owner of the annuity had the sole right to direct payments and that this right could not be assigned. The court concluded that the annuitant Jack "was not a party to the Annuity Contract and he has no right under the Annuity Contract to designate the payee…Thus, the Court concludes that Samuel Jack owned no rights under the Annuity Contract which he could assign to [the factoring company]." 390 B.R. at 326.[17]

---

[17] Texas cases have recognized that where a party attempts to sell something when it has nothing to sell, there can be no breach of contract or no enforcement of the assignment. *See Heritage Res., Inc. v. Anschutz Corp.*, 689 S.W.2d 952, 956 (Tex. App.—El Paso 1985, writ ref'd n.r.e.)

(Continued)

Like the above cases, the annuitant here, Adegoke, does not own the Annuity. PSSC is the owner of the Annuity. *See* RR, Vol. 6, Plaintiff's Ex. 2. The Annuity is also clear that "***the owner <u>alone</u> is entitled to (a) any contract benefit***," and has "the right to designate or change the person or entity to whom annuity payments will be made." *See id.*at p. 2 (emphasis added). In other words, PSSC had the right to designate and direct the Annuity payments as it wanted, and Adegoke would have had no right to say otherwise.[18]

Exactly like the above cases, here RSL asserts that Adegoke assigned her rights to the Annuity to RSL, asserting that it obtained from "Adegoke the rights to

---

(Continued)

(contract provision provided that party could sell earned interest; however, there was no earned interest and therefore nothing to sell, and therefore there was no breach of a contract right to sell earned interest); *Carlile v. Harris*, 38 S.W.2d 622, 624 (Tex. Civ. App.—Galveston 1931, no pet.) (assignee took no better title to papers than assignor, and papers were all void ab initio because of total failure of consideration; "'lien must exist before it can be assigned, and, if the conditions of its existence are lacking, one who takes by assignment of the paper purporting to be such a lien is in no better attitude than his assignor, who had nothing to assign; for an assignment cannot bring into existence that which had no being before it was made'"; "note and liens being thus null and void, they could not constitute the basis of any right"); *Blackmon-Dunda v. Mary Kay, Inc*., 2009 Tex. App. LEXIS 2512, *7-9 (Tex. App. —Dallas, Apr. 1, 2009, pet. denied).

[18] That Adegoke was never to have any rights to the Annuity was set forth repeatedly. *See* 1st Supp. CR 425 ("All rights of ownership and control of [the Annuity] shall be vested in [PSSC]"); RR, Vol. 6, Plaintiff's Ex. 1 ("All rights of ownership and contract of such annuity contract shall be and remain vested in [PSSC] exclusively"; PSSC's payment directions "shall be ***solely for [PSSC]'s convenience*** and shall not provide [Adegoke] or any payee with any rights or ownership or control over the [Annuity] or against the Annuity Issuer" (emphasis added)); RR, Vol. 6, Plaintiff's Exs. 4 and 8 (SCC Order and the Rapid Order specifically state that the orders do not modify or negate ownership or control of the Annuity).

- 28 -

annuity payments"; that it possessed the "right to receive the proceeds due under the Annuity contract"; and that the Prudential Defendants breached their agreement by "refusing to make the Annuity Payments as set forth by the [Rapid] Order." 1st Supp. CR 10-13 at ¶¶ 9, 18-19. The Rapid Order itself identifies the assigned payments specifically as payments under "Annuity Contract No. A9901070" and as the "monthly annuity payments." *See* RR, Vol. 6, Plaintiff's Ex. 8.

The above cases make it clear that neither an annuitant nor factoring company can seek to enforce assignment rights under an annuity contract to which the annuitant is not the owner, because those rights could not be assigned in the first instance. Therefore, RSL's claim fails on this basis as well.

### 3. As a Mere Incidental Third-Party Beneficiary, Adegoke had No Enforceable Interests in the Annuity.

In addition to not being a party to the Annuity, Adegoke was also not an "intended" third-party beneficiary. As a mere "incidental" third-party beneficiary, Adegoke had no rights capable of enforcement (even assuming they could be assigned, which they could not), and neither does RSL.

A third party may only recover on a contract made between other parties "if the parties intended to secure a benefit to that third party, and only if the contracting parties entered into the contract *directly for the third party's benefit*." *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002) (emphasis added). *South Texas Water Authority v. Lomas*, 223 S.W.3d 304, 306 (Tex. 2007). There is a strong

- 29 -

presumption against – not in favor of – conferring third-party beneficiary status on a non-party to a contract. *Id.*[19]

A court will not create a third-party beneficiary contract by implication. "Rather, an agreement must *clearly and fully* express an intent to confer a direct benefit to the third party." *Stine v. Stewart*, 80 S.W.3d at 589 (emphasis added); *Lomas*, 223 S.W.3d at 306.[20] "'[T]he fact that a person is directly affected by the parties' conduct, or that he "may have a substantial interest in a contract's enforcement, does not make him a third-party beneficiary."'" *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 421 (Tex. 2011) (citations omitted).

"'An incidental beneficiary acquires no right either against the promisor or the promisee.'" *See Tawes*, 340 S.W.3d at 425 (quoting 13 Williston on Contracts § 37:19, at 124-25 (4th ed. 2000)); *see also Hurt*, 357 S.W.3d at 148; *Bruner v.*

---

[19] Indeed, establishing third-party beneficiary status, which is on the party claiming to be the intended third-party beneficiary, is "a difficult burden" because of the "strong presumption" against third-party beneficiary status. *Marine Creek Partners, Ltd. v. Caldwell*, 926 S.W.2d 793, 795 (Tex. App.—Fort Worth 1996, no writ).

[20] *See also Camco Oil Corp. v. Vander Laan*, 220 F.2d 897, 899 (5th Cir. 1955) ("recovery is not allowed without an express statement that the promise is for the benefit of the third party"); *Caldwell*, 926 S.W.2d at 795 (concluding terms of contract were insufficient to confer intended third party-beneficiary status); *EOG Res., Inc. v. Hurt*, 357 S.W.3d 144, 148 (Tex. App.—Fort Worth 2011, pet. denied) ("It is well settled that third-party beneficiary claims succeed or fail according to the provisions of the contract upon which suit is brought"; "A third party may recover on a contract made between other parties if the parties (1) intended to secure a benefit to that third party and (2) entered into the contract directly for the third party's benefit").

*Exxon Co., U.S.A., A Div. of Exxon Corp.*, 752 S.W.2d 679, 682 (Tex. App.—

Dallas 1988, writ denied) ("There are three types of third-party beneficiaries:

donee beneficiaries, creditor beneficiaries, and incidental beneficiaries. Only the

first two may enforce contracts to which they are not parties.")

Indeed, RSL has not cited to any case under Texas law (or the law of any

other jurisdiction) where a structured settlement payee was permitted to pursue a

claim for payments as an *intended* third-party beneficiary against an annuity issuer.

To the contrary, in the structured settlement context, courts have consistently

concluded that annuitants like Adegoke are incidental, not intended, third-party

beneficiaries of the annuity. As the court in *Jones* reasoned, although a payee like

Adegoke may derive a benefit from a structured settlement annuity, that benefit is

purely *incidental*:

> In the settlement agreements, Equitable as assignee agreed to purchase
> an annuity contract from Integrity and to assume thereby all obligation
> for payment of proceeds to the plaintiff-payees. The … Agreement …
> specifically stated (in keeping with the dictates of Section 130 of the
> Internal Revenue Code): 'Plaintiff shall have no legal interest, vested
> or contingent, in such annuity contract as owner.' … Further
> reinforcing the absence of ownership in the payees, the annuity
> contracts restricted the right of assignment to Equitable alone. …
> Thus, although Equitable clearly owed a duty to the obligor-
> tortfeasors to make payments to the tort victim-payees, the right to
> receive payments flowed from Integrity to Equitable, rendering the
> payees ***incidental third-party beneficiaries*** who retained none of the
> incidents or accouterments of ownership in the annuities.

- 31 -

*Jones*, 28 S.W.3d at 313-314 (emphasis added); *see also Windsor-Thomas Group, Inc. v. Parker*, 782 So.2d 478 (Fla. Dist. Ct. App. 2001) (granting annuity issuer's motion to dissolve writ seeking attachment of structured settlement annuity); *Allstate Ins. Co. v. Am. Bankers Ins. Co.*, 882 F. 2d 856, 859-60 (4th Cir. 1989) (holding that payee could not enforce assignment of his rights to future payments against annuity precisely because he had no legal rights to that contract).

Here, it is clear here that, in terms of intent, the Annuity was only purchased for PSSC's convenience and provided no rights to Adegoke. The Annuity is specific that PSSC alone had the right to designate or change to whom the Annuity payments would be made. RR, Vol. 6, Plaintiff's Ex. 2, p. 2. While payments were being issued to Adegoke, it was for PSSC's convenience only, and any payment was "subject to the owner's right to direct payments." *Id.* at "Payment Schedule."

Other separate contracts likewise make clear that Adegoke did not have any enforceable interest in the Annuity and that the Annuity was solely for PSSC's benefit and convenience. Specifically:

- The Settlement Agreement was clear that, "[a]ll rights of ownership and control" in any annuity were vested in PSSC, and that, for any annuity purchased, Prudential "*may*" make payments to Adegoke for PSSC's "*convenience*." *See* 1st Supp. CR 424-25 (emphasis added).

- The Qualified Assignment provided that PSSC "*may*" fund the periodic payments by purchasing an annuity, and all "rights of ownership and control of such ***annuity contract shall be and remain***

- 32 -

*vested in [PSSC] exclusively*."  RR, Vol. 6, Plaintiff's Ex. 1, ¶ 6 (emphasis added).

- The Qualified Assignment also provided that PSSC's payment directions "shall be *solely for [PSSC]'s convenience* and *shall not provide [Adegoke] or any payee with any rights* of ownership or control over the [Annuity] or against the Annuity Issuer."  RR, Vol. 6, Plaintiff's Ex. 1, ¶ 7 (emphasis added).

In short, Adegoke was an incidental – not intended – beneficiary of the Annuity, with no enforceable rights.  As such, neither she nor RSL could recover under the Annuity.  *See e.g., Jones*, 28 S.W.3d at 313-14; *Hurt*, 357 S.W.3d at 151.

**4.     RSL Was Not Assigned the Separate Contracts of the Annuity, Settlement Agreement, and Qualified Assignment.**

First, RSL admits it was only assigned the "***annuity payments***."  *See* 1st Supp. CR 8-16 at ¶¶ 9, 10, 18, 19; *see also* RR, Vol. 6, Plaintiff's Exs. 5 and 8. Assigning payments and assigning a contract are two different matters.  Because Adegoke did not assign contractual rights (assuming *arguendo*, she could assign the Annuity contract), there can be no breach of contract.

Likewise, nothing in the Rapid Order – or anywhere else – provides that the Settlement Agreement and Qualified Assignment were assigned to RSL.[21]  If these

---

[21] In addition, the Prudential Defendants were not parties to the Settlement Agreement, and there is nothing in the record establishing otherwise.  Moreover, Adegoke was not a party to the Qualified Assignment; she only signed as to form and content.

contracts had been assigned to RSL, it would certainly need to be clear and, as provided in Section III(B)(7) *infra*, meet the requirements for a valid contractual assignment. RSL is clearly lacking that here and has not proved otherwise.

RSL then argues that the Settlement Agreement, Qualified Assignment, and Annuity should all be read as one contract. However, the law in Texas is that separate and distinct contracts, executed and signed by different parties and imposing different obligations on the parties executing them, cannot be read together. *See Henderson v. Little*, 248 S.W.2d 759, 761 (Tex. App.—Amarillo 1952, reh'g denied) (explaining that independent contracts, between different parties, and not made with reference to each other, may not be construed together, though one refers to other); *Speedemissions, Inc. v. Gate*, 404 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (refusing to read two agreements together, which were between different parties and each had separate and distinct purposes); *see also Hydro-Line Mfg. Co. v. Pulido*, 674 S.W.2d 382, 387 (Tex. App.—Corpus Christi 1984, reh'g denied) ("[W]here the instruments are separate, distinct, and completely different, the first contract is not considered in construing

the second."); *Martin v. Davis Constructors, Inc.*, 552 S.W.2d 873, 877 (Tex. Civ. App.—San Antonio 1977, writ ref'd n.r.e.) (same).[22]

Because the Annuity payments were the only matters purportedly assigned in the Rapid Order, RSL has failed to establish an enforceable contract.

**5.     The Anti-Assignment Language is Enforceable.**

Assuming *arguendo* that it was appropriate to consider the Settlement Agreement and Qualified Assignment, these contracts contain enforceable anti-assignment language, which prohibits the assignment of payments.  *See* 1st Supp. CR 425 and 423; RR, Vol. 6, Plaintiff's Ex. 1, ¶ 3.  RSL has provided no binding

---

[22] In addition, the only time multiple contracts can arguably be read together is to ascertain the parties' intent where there is an ambiguity.  If a written contract is worded so that it can be given a definite or certain legal meaning, then it is unambiguous.  *See Gulf Ins. Co. v. Burns Motors,* 22 S.W.3d 417, 423 (Tex. 2000); *Cook Composites, Inc. v. Westlake Styrene Corp.,* 15 S.W.3d 124, 131 (Tex. App.—Houston [14th Dist.] 2000, pet. dism'd).  An ambiguity does not arise simply because the parties offer conflicting interpretations.  *In re D. Wilson Construction Co.,* 196 S.W.3d 774, 781 (Tex. 2006); *Lopez v. Munoz, Hockema & Reed,* 22 S.W.3d 857, 861 (Tex. 2000).  Unambiguous contracts are enforced as written.  *See, e.g., Heritage Res., Inc. v. Nationsbank,* 939 S.W.2d 118, 121 (Tex. 1996).

Here, RSL has never identified any ambiguity that requires examination into intent.  RSL has always maintained it was assigned the Annuity payments via the Rapid Order.  It has never identified anything ambiguous with the Annuity and would be precluded from doing so now.  Tex. R. App. P. Rule 33; *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 222 (Tex. 2002) (party failed to raise argument and thus did not preserve it for appeal).  RSL has failed to establish why separate contracts, executed by different parties and for different purposes, should be read together.

authority otherwise, and its citation to a New Jersey case as the "leading case" in the country is just plain wrong.[23]

In Texas and across the country, anti-assignment language is regularly enforced and, contrary to RSL's contention, is done so without requiring any specific kind of language. In *Singer Asset Fin. Co., LLC v. Continental Cas. Co.*, the court concluded that, "under Texas Law, the anti-assignment provision is valid and enforceable," where the anti-assignment provision simply provided, "'To the extent provided by law, the aforesaid monthly payments shall not be subject to assignment, transfer, commutation or encumbrance, except as provided herein.'" *See Singer Asset Fin. Co., LLC v. Continental Cas. Co.,* 886 So. 2d 1004, 1005 (Fla. Dist. Ct. App. 2004); *Johnson v. Structured Asset Services*, 148 S.W.3d 711, 721 (Tex. App.—Dallas, 2004, no pet.) ("Anti-assignment clauses are enforceable unless rendered ineffective by a statute") (citing *Reef v. Mills Novelty Co.*, 89

---

[23] In addition, it well-established that the SSPAs, which have been enacted in at least 47 states, including Texas, do not abrogate the common law of contracts or contractual anti-assignment provisions. *See In re Foreman*, 365 Ill. App. 3d 608, 850 N.E.2d 387 (Ill. App. Ct. 2006) ("anti-assignment provision . . . benefits [the settlement obligor and annuity issuer] by guarding against administrative risks and burdens, the potential for multiple liability, and the loss of predictability"); *Matter of 321 Henderson Receivables Origination LLC (Logan)*, 19 Misc. 3d 504, 506, 865 N.Y.S. 2d 817, 819 (N.Y. Sup. Ct. 2008); *see also Enos v. State*, 889 S.W.2d 303, 305 (Tex. Crim. App. 1994) (well-established tenet that a statute must not be interpreted as abrogating a principle of the common law unless such overruling is clearly indicated in statute); Tex. Civ. Prac. & Rem. Code § 141.007(e) ("[n]othing contained in this chapter may be construed to authorize any transfer of structured settlement payment rights *in contravention of any law*" (emphasis added)).

S.W.2d 210, 211 (Tex. 1936)).[24]  Indeed, virtually every court in the country that

has ruled on anti-assignment provisions depriving the payee of the ability to assign

structured settlement payment rights has held that such language effectively

invalidates a purported assignment. [25]

Further, the anti-assignment provision is for the benefit of the obligor, not

the payee, and the Prudential Defendants have the right to assert the validity of the

terms of these contracts.  *See Fox-Greenwald Sheet Metal Co. v. Markowitz Bros*.,

452 F.2d 1346, 1351-1352 (D.C. Cir. 1971); *Matter of 321 Henderson Receivables*

*Origination LLC (Logan)*, 865 N.Y.S.2d at 819.[26]

---

[24] *See also Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n.*, 710 S.W.2d 551, 556 (Tex. 1986) (enforcing the anti-assignment provision of loan); *Reef v. Mills Novelty Co.*, 89 S.W.2d 210, 211 (Tex. 1936); *Texas Farmers Ins. v. Gerdes*, 880 S.W.2d 215, 218 (Tex. App.— Fort Worth 1994, writ denied) (enforcing anti-assignment clause in insurance policy); *Cloughly v. NBC Bank-Seguin, N.A.*, 773 S.W.2d 652, 656 (Tex. App.—San Antonio 1989, writ denied) (enforcing anti-assignment provision of annuity agreement); *Conoco, Inc. v. Republic Ins. Co.*, 819 F.2d 120, 124 (5th Cir. 1987) (enforcing anti-assignment provision in insurance contract).

[25] *See e.g., J.G. Wentworth S.S.C., Ltd. P'Ship v. Callahan*, 649 N.W. 2d 695 (Wis. Ct. App. 2002) (upholding the modern trend by enforcing an anti-assignment clause in the structured settlement agreement); *In re Kaufman,* 37 P.3d 845 (Okla. 2001); *In re Nitz,* 739 N.E.2d 93 (Ill. App. Ct. 2000); *Piasecki v. Liberty Life Assur. Co. of Boston,* 728 N.E.2d 71, 74 (Ill. App. Ct. 2000); *Green v. Safeco Life Ins. Co.*, 727 N.E.2d 393 (Ill. App. Ct. 2000); *Henderson v. Roadway Express*, 720 N.E.2d 1108, 1110 (Ill. App. Ct. 1999); *In re Foreman*, 365 Ill. App. 3d at 614-15, 850 N.E.2d at 392-93; *Liberty Life Assur. Co. of Boston v. Stone Street Capital, Inc.*, 93 F. Supp. 2d 630, 637 (D. Md. 2000); *Grieve v. General American Life Ins. Co.*, 58 F. Supp. 2d 391, 321 (D. Vt. 1999); *Johnson v. First Colony Life Ins. Co.*, 26 F. Supp. 2d 1227, 1229 (C.D. Cal. 1998).

[26] To the extent RSL argues that the Prudential Defendants waived the breach of the anti-assignment clause, it is not clear that RSL has established that it needs to be raised as an

(Continued)

**6.      RSL has Failed to Establish Standing**

Texas courts are clear that in order to bring suit, a plaintiff must have both standing and capacity.  *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 847 (Tex. 2005).  Although often misconstrued, capacity and standing are distinct concepts.  "A plaintiff has *standing* when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has *capacity* when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy."  *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 789-90 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *cf. Austin Nursing Ctr.*, 171 S.W.3d at 849 (finding that capacity concerns whether party has personal right to come into court, rather than whether party has enforceable right or interest).

The issue here is whether RSL has a legal right to a lawsuit, *i.e.*, a justiciable interest in the outcome and a sufficient relationship with the Annuity such that it would be personally aggrieved by any breach thereof.  This is a matter of standing.  *Cf. Green Tree Servicing*, 388 S.W.3d at 790 (whether plaintiff established sufficient chain of title related to the issue of standing rather than

---

(Continued)

affirmative defense.  However, even if it does, the Prudential Defendants raised it.  *See e.g.*, 1st Supp. CR 26-27 (Fourth, Fifth, and Tenth Defenses); 2nd Supp. CR 275-300.

capacity) (citing *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 618 (Tex. 2004) (holding that privity of contract is matter of standing)); *AVCO Corp. v. Interstate Sw., Ltd*., 251 S.W.3d 632, 649 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("[c]apacity concerns 'a party's personal right to come into court,' while standing concerns 'the question of whether a party has an enforceable right or interest'").

Here, RSL is not suing on behalf of anyone else, which might implicate a capacity issue; it is suing on its own behalf. Thus, the issue is whether RSL has a legally cognizable right and that is one of standing. *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976) ("Without a breach of a legal right belonging to the plaintiff[,] no cause of action can accrue to his benefit"). RSL has failed to establish it obtained a legally cognizable right to the Annuity. Therefore, the directed verdict should be affirmed.[27]

---

[27] It is also worth noting here that once Adegoke agreed, in connection with factoring transaction with SCC, that the Prudential Defendants were to send the full amount of each payment made payable and delivered to SCC, she had no further claim against the Prudential Defendants, and therefore, neither would RSL. If RSL had any claim, it would be against Adegoke or SCC for the payments, not the Prudential Defendants.

**7.     RSL Failed to Establish a Valid Contractual Assignment.**

RSL argues that Rapid assigned its rights under the Transfer Agreement to RSL.  *See* Appellant's Brief, p. 28.[28]  However, an assignment is a contract and operates by way of contract.  *See Univ. of Tex. Med. Branch at Galveston v. Allan*, 777 S.W.2d 450, 453 (Tex. App.—Houston [14th Dist.] 1989, no writ) (citing 6 Am. Jur. 2d Assignments § 82 ("A valid assignment must contain clear evidence of the intent to transfer rights, must describe the subject matter of the assignment, must be clear and unequivocal, and must be noticed to the obligor.")); *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 809 F. Supp. 2d 582, 590 (N.D. Tex. 2011).  Accordingly, "[a]n assignment is subject to the same requisites for validity as are other contracts; *i.e.*, mutuality of assent, proper parties with the capacity to make a contract, consideration and legal subject matter."  *Lone Mountain Production Co. v. Natural Gas Pipeline Co. of Am.*, 710 F. Supp. 305, 310 (D. Utah 1989); *see also Brown v. Mesa Distributors, Inc.*, 414 S.W.3d 279, 285 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Assignments are governed by contract law."); *Cadle Co. v. Henderson*, 982 S.W.2d 543, 546 (Tex. App.—San Antonio 1998, no pet.) (same).

---

[28] RSL has never established – nor does it appear to argue – that the Transfer Agreement is a contract between any parties other than Adegoke and Rapid, the latter of which is not a party to this litigation.  *See* RR, Vol. 6, Plaintiff's Ex. 5.

Here, RSL has failed to present evidence of the requisites for a valid contractual assignment (mutuality of assent, proper parties with the capacity to make a contract, consideration and legal subject matter) between itself and Rapid. Like many of the chains above, this is a necessary step for RSL to be able to assert a breach of contract claim. Further, as established above, the Rapid Order cannot constitute a contract.

## C.     The Trial Court Properly Severed the Case.

A claim is properly severable if (1) the controversy involves more than one cause of action; (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted; and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *See Guar. Fed. Sav. Bank v. Horseshoe Operating Co.,* 793 S.W.2d 652, 658 (Tex. 1990) (op. on reh'g); *see also* Tex. R. Civ. P. 41 (***"Any claim*** against a party ***may be severed*** and proceeded with separately."*) (emphasis added); Tex. R. Civ. P. 174(b) ("The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of ***any separate issue or of any number of claims . . . or issues***.") (emphasis added).

As "[t]he controlling reasons for a severance are to do justice, avoid prejudice, and further convenience," Rule 41 of the Texas Rules of Civil Procedure "grants the trial court broad discretion in the matter of severance . . . ." *Guar. Fed.*

*Sav. Bank,* 793 S.W.2d at 658. The Court will therefore review a trial court's decision to grant or deny a motion to sever for an abuse of discretion. *See Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 629 (Tex. 1996).[29]

Severance is available to the court for any number of purposes, including severing a remaining claim from issues that have already been the subject of interlocutory orders. "Severance is a proper means of rendering an otherwise interlocutory appeal final when some parties and issues still remain." *City of Beaumont v. Guillory,* 751 S.W.2d 491 (Tex. 1988); *Pilgrim Enterprises, Inc. v. Maryland Cas. Co.*, 24 S.W.3d 488, 492 (Tex. App.—Houston [1st Dist.] 2000, no pet.). *See Farmer v. Ben E. Keith Co.*, 907 S.W.2d 495, 496-97 (Tex. 1995) (per curiam); *see also Shafer Plumbing & Heating, Inc. v. Controlled Air, Inc.*, 742 S.W.2d 717, 721 (Tex. App.—San Antonio 1987, no writ).

In this case, when the trial court ordered severance, nothing remained to be tried between RSL and the Prudential Defendants. There had been a conventional trial on the merits, and the trial court had entered a final judgment as to all claims

---

[29] RSL's citation to *Womack v. Berry*, 291 S.W.2d 677, 683 (Tex. 1956) actually works against it. Holding that the *failure to sever* was an abuse of discretion, the Court explained that where "there is no fact or circumstance supporting or tending to support a contrary conclusion, and the legal rights of the parties will not be prejudiced thereby*, there is no room for the exercise of discretion* . . . [and] *[t]he rule then is peremptory in operation and imposes upon the court a duty to order a separate trial*." *Womack*, 291 S.W.2d at 683 (emphasis added). In other words, the court essentially must sever.

and all parties. *See* CR 4-6. While RSL argues the existence of interpleader means there can be no severance, the Prudential Defendants did not make a claim to the interpleaded funds, and the trial court ordered that RSL could recover the interpleaded funds, less the attorneys' fees and interest awarded to the Prudential Defendants. CR 5.[30]

Therefore, at the time of severance, all that remained was the potential that RSL and Olubumi might arbitrate their claims with each other. There is no evidence in the record that RSL has been currently seeking to arbitrate any claims with Olubumi,[31] and there is no evidence that Olubumi has been seeking to assert claims against RSL since intervening. Olubumi had non-suited long before the trial and has not participated in proceedings since non-suiting. Further, there were never any claims asserted between the Prudential Defendants and Olubumi.

---

[30] This award out of the interpleaded funds is simply a procedural mechanism and provided for under Texas law to ensure the Prudential Defendants actually get paid, rather than have to go through possible enforcement or garnishment procedures. The result is the same as if RSL was awarded the entirety of the interpleaded funds and then had to pay the award. Therefore, RSL has nothing to complain about.

[31] That RSL would be attempting to utilize arbitration as an offensive measure is simply the usual practice of RSL-related entities. In *Symetra Life Ins. Co. v. Rapid Settlements, Ltd.*, 2014 U.S. App. LEXIS 24349 (5th Cir. Dec. 23, 2014), the court recognized that whenever there was a dispute, "[w]hatever the circumstances," Rapid invoked the arbitration clauses, and the "ensuing arbitrations were a sham" and a "naked attempt to circumvent the SSPAs." 2014 U.S. App. LEXIS 24349 at *6-7.

It appears that RSL opposes severance simply to try and keep the Prudential Defendants in litigation, even though the trial court ordered that RSL could recover the interpleaded funds, thus giving RSL what it sought when it created this unnecessary mess in the first place. If there is a dispute between RSL and Olubumi over the interpleaded funds, that does not involve the Prudential Defendants. Significantly, the dispute between RSL and Olubumi was, at RSL's request, ordered to proceed separately from this litigation in arbitration, and was never going involve the Prudential Defendants, who were not ordered to arbitraiton. This further demonstrates the independence of the claims. The claims were properly severable. *Guar. Fed. Sav. Bank* v. *Horseshoe Operating Co.*, 893 S.W. 2nd 652, 657-58 (Tex. 1990).

**D.     RSL is Wrong on the Interpleader Facts and Relief, and the Trial Court Properly Determined That the Prudential Defendants Interpleaded the Funds.**

**1.     There Were Conflicting Claims to the Funds, and Trial Court Properly Recognized that the Prudential Defendants Interpleaded the Funds.**

Granting a party the right to interplead is within the sound discretion of the trial court. *Barnett v. Woodland*, 310 S.W.2d 644, 647 (Tex. App.—Austin 1958, writ ref'd n.r.e.); *Petro Source Partners, Ltd. v. 3-B Rattlesnake Red (1990), Ltd.*, 905 S.W.2d 371, 375 (Tex. App.—El Paso 1995, writ denied). "It has been said concerning the remedy of interpleader that it is so beneficial and so just that any

reasonable doubt as to the right thereto will be resolved in favor of the existence of the remedy." *Security State Bank v. Shanley*, 182 S.W.2d 136, 138 (Tex. Civ. App.—San Antonio 1944, no writ).  Therefore, "any reasonable doubt about a stakeholder's right to interpleader must be resolved in the stakeholder's favor." *Bryant v. United Shortline Inc.*, 984 S.W.2d 292, 296 (Tex. App.—Fort Worth 1998, no pet.); *Petro*, 905 S.W.2d at 375; *Luse v. Union City Transfer*, 324 S.W.2d 935 (Tex. App.—Waco 1959, writ dism'd).

Texas Rule of Civil Procedure 43 "expressly disclaims certain pre-rule restrictions imposed on interpleader practice" and only requires conflicting claims. *Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 401 (Tex. App.—Beaumont 2009, no pet.).  Interpleader is proper where there are **conflicting orders**.  *See Texaco, Inc. v. LeFevre*, 610 S.W.2d 173, 176 (Tex. Civ. App.—Houston [1st Dist.] 1980, no writ) (stakeholder that received conflicting orders was allowed to interplead).

Here, the Prudential Defendants filed a Counterclaim for Interpleader in their Answer, providing the facts of the conflicting claims and conflicting orders. *See* 1st Supp. CR 24-114; 1st Supp. CR 32 at ¶¶ 34, 45-50.  Under the SCC Order, the Prudential Defendants were "directed to **deliver and make payable**" to SCC the full amount of each Periodic Payment.  *See* RR, Vol. 6, Plaintiff's Ex. 4, p. 3. Then, under the Rapid Order, the Prudential Defendants were purportedly

"directed to deliver and make payable" to RSL portions of the same payments that were ordered to be made payable to SCC. *Compare* RR, Vol. 6, Plaintiff's Ex. 4 *with* Plaintiff's Ex. 8. Both orders could not be followed at the same time.[32] This is sufficient to establish interpleader.

---

[32] RSL focuses on what was purportedly "assigned," instead of what the Prudential Defendants were ordered to pay. Even though Adegoke may have only assigned a portion of each payment to SCC and later purportedly assigned the remaining portion to RSL, the fault with RSL's claim is that, with respect to the Prudential Defendants, they were first and foremost obligated to send the entire payment to SCC. *See* RR, Vol. 6, Plaintiff's Ex. 4. If they have to make the entirety of each payment payable to SCC, they cannot also make those same monies payable to RSL.

RSL's problem is that when Rapid obtained the Rapid Order, it should have sought to obtain its payments from SCC, not the Prudential Defendants. This appears to be what happened in cases relied upon by RSL, but which cases are inapposite because of this fact. In *J.G. Wentworth Originations, LLC v. Perez*, 2014 Tex. App. LEXIS 8798 (Tex. App.—Houston [1st Dist.] Aug. 12, 2014, no pet.) and *J.G. Wentworth Originations, LLC v. Freelon*, 2014 Tex. App. LEXIS 8797 (Tex. App.—Houston [1st Dist.] Aug. 12, 2014, no pet.), there were servicing agreements in the initial factoring transactions, where the annuity issuer was sending the entirety of each payment to the factoring company, which would then remit the unassigned portion of the payment back to the payee, like here. However, unlike here, in the subsequent factoring transaction, the *first factoring company* was ordered to send the unassigned portions to the next factoring company (in both cases, an RSL entity), instead of the payee. The only reason the court could conclude that the subsequent factoring transaction did not contravene a prior court order, as required under the Texas Act, was because the annuity issuer (like Prudential) was still required to send 100% to the first factoring company under the first order, and it was that first factoring company who had to remit the assigned payments to the RSL entity per the second order. Therefore, **unlike here,** the annuity issuer was not being ordered to send the entirety of each payment to the first factoring company and then also send a portion of the same payments to a second factoring company.

RSL should clearly be aware of this distinction, as well as the fact that it caused its own problem by seeking payments from the wrong parties. Instead, it pretends that these facts do not exist. Indeed, even the trial court recognized that once the SCC Order was entered and was res judicata, the Prudential Defendants had no further obligation to Adegoke on the monthly payments. *See* RR, Vol. 4, pp. 137-141 (trial court questioning, "Where is Prudential's obligation on these monthly payments in light of that obligation that [Adegoke] signed" to send the entirety of each payment to SCC).

Moreover, **RSL admitted in its initial pleading that there was a conflict,** stating that it had "embarked on discussions to settle any hyper-technical issue **pertaining to conflicting payments**." 1st Supp. CR 12 at ¶ 12 (emphasis added). RSL also admitted during trial and oral argument that the Prudential Defendants were ordered to send and make payable the entire amount to SCC and that interpleader was proper. *See* RR, Vol. 3, pp. 257-260, 265, 269-270; Vol. 4, pp. 21-25; RR, Vol. 4, p. 141; *see also* RR, Vol. 4, p. 167.

In addition, an actual deposit of the funds into the court registry is not required, only an unconditional tender. *Heggy v. Am. Trading Employee Ret. Account Plan*, 123 S.W.3d 770 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) ("only an unconditional tender, not a deposit, is required"); *see also Petro*, 905 S.W.2d at 377; *Clayton*, 284 S.W.3d at 403; *Martinez v. Martinez*, 2010 Tex. App. LEXIS 6994 (Tex. App.—Corpus Christi Aug. 26, 2010, pet. filed) (recognizing insurer had made unconditional tender of funds in a motion for interpleader, even though insurer was not ordered until later to deposit sums into court registry).

Here, the Prudential Defendants stated that they "are innocent stakeholders and claim no title or interest in the Payments at Issue" and are "are willing and able to deposit the Payments at Issue into the registry of this court." *See* 1st Supp. CR 35 at ¶¶ 48-50; *see also* RR, Vol. 4, pp. 171-172, 175 (Prudential Defendants were

willing to pay the Payments at Issue once they got the appropriate direction and that they have "always been willing to make the payments owed"). Thus, regardless of when the Prudential Defendants actually deposited the funds into the registry of the Court, the Prudential Defendants unconditionally tendered the funds and disclaimed any interest in their Answer.

Further and importantly, on January 25, 2013, in granting SCC's motion for summary judgment, the trial court recognized that the Prudential Defendants had previously interpleaded the payments at issue. *See* 2nd Supp. CR 105-110, p. 2 ("Settlement Capital is entitled to received, collect, and recover certain of the monies, funds, and *payments that were interpleaded by the Prudential Defendants* in this case (the 'Interpleaded Funds')" (emphasis added)). RSL cannot challenge the Court's determination that the Prudential Defendants interpleaded the funds. It was already decided and is the law of the case. As such, all that was left at trial was for the award of attorneys' fees.

**2.** **The Prudential Defendants Attempted to Resolve the Conflicting Payment Directions, But RSL and Rapid were Uncooperative. The Prudential Defendants Filed their Interpleader Promptly with their Answer.**

RSL argues that the Prudential Defendants failed to prove that they did not unreasonably delay in filing their interpleader.[33] However, Texas courts have repeatedly recognized that interpleader "'is not improper merely because it is delayed…the rules of procedure require only conflicting claims.'" *Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 401 (Tex. App.—Beaumont 2009, no pet.). Moreover, courts look at the timing of when a petition for interpleader is filed in the litigation, recognizing that interpleader is properly filed with an answer to the suit. *See Petro*, 905 S.W.2d at 377 (stakeholder did not delay unreasonably in interpleading funds until seven weeks after suit was filed). The "purpose of requiring a petition in interpleader to be filed promptly is to avoid delaying disposition of the action." *Ginn v. Texas Farmers Ins. Co.*, 1998 Tex. App. LEXIS 6355 (Tex. App.—Austin Oct. 15, 1998, no pet.).

Here, there was no unreasonable delay, as the interpleader was filed less than a month after the litigation commenced. *Lee Memorial Hosp. v. Elgin-Butler Brick Co.*, 436 S.W.2d 354, 356 (Tex. Civ. App.—Austin 1969, no writ) (delay in

---

[33] To the extent RSL is asserting laches, it failed to identify this as an affirmative defense, and it is waived. *See* 1st Supp. CR 238-239.

- 49 -

requesting permission to file an interpleader, not quite nine months from the date of appellees' last pleading was "insignificant"; petition brought to court's attention on the day of trial would not necessarily cause undue delay).

Further, the Prudential Defendants informed Rapid prior to the Rapid transfer that the subject payments were already scheduled to be made to SCC. *See* RR, Vol. 6, Plaintiff's Ex. 7; *see also* RR, Vol. 3, p. 185.[34] The Prudential Defendants then attempted to amicably resolve the conflict for years, but Rapid and RSL were uncooperative and failed to satisfy their obligations under the Stipulation. *See* 1st Supp. CR 24-114.[35]

---

[34] While RSL argues that the Prudential Defendants are bound by res judicata to the Rapid Order, the Rapid Order was an impermissible collateral attack on the SCC Order. A collateral attack is an "attempt to avoid the effect of a judgment in a proceeding not instituted for the purpose of correcting, modifying, or vacating the judgment, but in order to obtain some specific relief, which the judgment currently stands as a bar against." *Sigmar v. Anderson*, 212 S.W.3d 789, 793 (Tex. App.—Austin 2006, no pet.); *see also In re French Gardens, Ltd.*, 58 B.R. 959, 963 (Bankr. S.D. Tex. 1986) ("A final judgment is conclusive and collateral attacks are not permitted. Though an action may have an independent purpose and may contemplate some other relief, it is a collateral attack if it must in effect overrule a previous judgment."). With the Rapid Order, Rapid and RSL sought to obtain relief, *i.e.*, payments, against which the SCC Order stood as a bar, since such payments were already scheduled to go to SCC. As an impermissible collateral attack on the SCC Order, the Rapid Order is void or barred. *See Dallas Cnty. Tax Collector v. Andolina*, 303 S.W.3d 926, 929-32 (Tex. App.—Dallas 2010, no pet.) (plaintiff's prior suit for declaratory relief constituted impermissible collateral attack on prior order); *Devji v. Keller*, No. 03-02-00754-CV, 2003 WL 21705829, at *8-9 (Tex. App.—Austin July 24, 2003, no pet.) (plaintiff's request for dissolution was barred as impermissible collateral attack on prior final judgment).

[35] RSL admitted during trial that there had been ongoing discussions with the Prudential Defendants for a long time and that there were efforts to try to work out the differences between the parties. *See* RR, Vol. 3, pp. 272-279, 285-6; RR, Vol. 4, pp. 49-50. The Prudential

(Continued)

Therefore, the ongoing settlement discussions, RSL's failure to fulfill its obligations to resolve the matter for which it has no excuse, and the Prudential Defendants' timely filing of its interpleader with its Answer establish that there was no unreasonable delay. *See Avila v. Lone Star Radiology*, 183 S.W.3d 814, 816 (Tex. App.—Waco 2005, no pet.) (no evidence that stakeholder delayed in bringing the interpleader action once it became clear that the matter could not be resolved, stakeholder tendered amount, and therefore was an innocent stakeholder entitled to fees in interpleader); *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 805 (Tex. 2007) ("delay before filing an interpleader may benefit all concerned, if settlement can be reached before lawyers must be hired and pleadings filed").

RSL's behavior throughout this matter has been consistent: cause a problem, blame someone else. It obtained a conflicting order and seeks to blame the Prudential Defendants. It refused to cooperate with the Prudential Defendants' efforts to resolve the problem, then RSL argues the Prudential Defendants delayed in filing their interpleader, even though the interpleader was filed with their

---

(Continued)

Defendants also testified as to their attempts to rectify the conflict and the ongoing discussions trying to resolve this matter. *See* RR, Vol. 4, pp. 156-165, 175-76.

Answer. There was simply no unreasonable delay here, and the fact that RSL refused to fix the problem it created was exactly what necessitated interpleader.

### 3. The Jury Properly Awarded the Prudential Defendants their Fees.

In Texas, "the award of attorney fees is within the sound discretion of the trial court." *Avila v. Lone Star Radiology*, 183 S.W.3d 814, 816 (Tex. App.— Waco 2005, no pet.) (citing *Olmos v. Pecan Grove Mun. Util. Dist.,* 857 S.W.2d 734, 741 (Tex. App.—Houston [14th Dist.] 1993, no writ)); *Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank,* 763 S.W.2d 52, 56 (Tex. App.—Dallas 1988, writ denied).

Moreover, under Texas interpleader law, an innocent stakeholder "is ***entitled*** to attorney's fees . . . ." *Id.* (emphasis added); *United States v. Ray Thomas Gravel Co.*, 380 S.W.2d 576, 581 (Tex. 1964); *Heggy*, 123 S.W.3d at 780 (trial court abused discretion in refusing to award innocent stakeholder its attorneys fees); *Olmos,* 857 S.W.2d at 741; *Salazar v. San Benito Bank & Trust Co.,* 730 S.W.2d 21, 24 (Tex. App.—Corpus Christi 1987, no writ) (affirming trial court's award of attorneys' fees to interpleading party).

Because the Court has already determined that the Prudential Defendants interpleaded the funds, *see* 2nd Supp. CR 105-110, p. 2, and because the Prudential Defendants disclaimed any interest in the payments at issue from the start, an award of attorneys' fees was proper. *Avila*, 183 S.W.3d at 816 (trial court abused

discretion in failing to award stakeholder attorney's fees for bringing the interpleader); *AMX Enters., L.L.P. v. Master Realty Corp.*, 283 S.W.3d 506, 519 (Tex. App.—Fort Worth 2009, no pet.) (op. on reh'g) (trial court did not err by awarding attorney's fees out of the impleaded funds); *see also Foreman v. Graham*, 693 S.W.2d 774, 778 (Tex. App.—Fort Worth 1985, writ ref'd n.r.e.) (trial court properly taxed stakeholder's attorneys' fees against losing party); *Lee Memorial*, 436 S.W.2d at 356. [36]

Thus, this Court should affirm the award of attorneys' fees and affirm the trial court's order that the Prudential Defendants may recover that amount, taxable costs, and post-judgment interest from the interpleaded funds. *See* CR 4-6.

## IV.
## PRAYER FOR RELIEF

For all of the foregoing reasons, the Prudential Defendants respectfully request that the Court deny the relief sought in RSL's appeal, dismiss this appeal, and affirm the trial court's orders and jury's award of attorneys' fees and interest to the Prudential Defendants.

---

[36] The Prudential Defendants presented evidence at trial as to their attorneys' fees, including their invoices. *See* RR, Vol. 4, pp. 184-190, 193; RR, Vol. 7, Defendants' Ex. 10. The first invoice evidenced total fees for the period of $8,860.95, which is the same amount that the jury awarded the Prudential Defendants. *See* RR, Vol. 5, pp. 19-22; *see also* CR 4-6.

Dated: January 12, 2015

Respectfully submitted,

 /s/ Patrick B. Larkin
Patrick B. Larkin
State Bar No. 24013004
**THE LARKIN LAW FIRM, P.C.**
11200 Broadway Street, Suite 2705
Pearland, Texas 77584
Telephone: (281) 412-7500
Facsimile: (281) 412-7502

Of Counsel:
Stephen R. Harris (admitted *pro hac vice*)
**DRINKER BIDDLE & REATH LLP**
One Logan Square, Suite 2000
Philadelphia, PA  19103-6996
Telephone:  (215) 988-2700
Facsimile:  (215) 988-2757

**Counsel for Appellees The Prudential Insurance Company of America and Prudential Structured Settlement Company f/k/a Prudential Property and Casualty Insurance Company of Holmdel, New Jersey**

## CERTIFICATE OF COMPLIANCE

I certify the brief of Appellees filed by The Prudential Insurance Company of America and Prudential Structured Settlement Company f/k/a Prudential Property and Casualty Insurance Company of Holmdel, New Jersey complies with the word-count limit specified by Texas Rule of Appellate Procedure 9.4(i)(2)(B). According to the word counter used by Microsoft Word (version 14.0.6112.5000) computer software, this brief contains 13,994 words of text.

_/s/ Patrick B. Larkin_____
PATRICK B. LARKIN

## CERTIFICATE OF SERVICE

I certify that on this 12th day of January, 2015, I delivered a true and correct copy of the foregoing instrument and any accompanying exhibit to all counsel of record, by electronic service and/or email in compliance with Texas Rule of Appellate Procedure 9.5.

E. John Gorman
John R. Craddock
The Feldman Law Firm LLP
Two Post Oak Central
1980 Post Oak Blvd., Suite 1900
Houston, Texas  77056-3877
*Counsel for Appellant, RSL-3B-IL, Ltd.*

Earl S. Nesbitt
Davis S. Vassar
Nesbitt, Vassar & McCown, LLP
15851 Dallas Parkway, Suite 800
Addison, Texas  75001
*Counsel for Appellee, Settlement Capital Corporation*

Greg Hill
Greg Hill, Attorney, PLLC
11200 Broadway, Suite 2743
Pearland, Texas 77584
*Counsel for Appellee, Olubumi Adegoke*


_/s/ Patrick B. Larkin_____
PATRICK B. LARKIN

**APPENDIX OF APPELLEES, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AND PRUDENTIAL STRUCTURED SETTLEMENT COMPANY F/K/A PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY OF HOLMDEL, NEW JERSEY**

**TABLE OF CONTENTS**

Exhibit A:   Copy of decision in *Finserv Casualty Corp. v. Transamerica Occidental Life Ins. Co.*, Case No. 2011-05238 (District Court — Harris County, Texas [165th Dist.] August 27, 2013).

# EXHIBIT "A"

NO. 2011-05238

FINSERV CASUALTY CORP., §
CAPSTONE ASSOCIATED SERVICES, LTD §
LIQUIDATING MARKETING, LTD., §
RSL FUNIDNG, LLC, RSL-3B-1L, LTD §
RSL-5B-1L, LTD, RSL SPECIAL-1V, §
  Plaintiff(s) §
     §
     §
vs      §
     §
TRANSAMERICA OCCIDENTAL LIFE §
INSURANCE COMPANY, §
TRANSAMERICA LIFE INSURANCE §
COMPANY, TRANSAMERICA ANNUITY §
SERVICE CORPORATION and §
MONUMENTAL LIFE INSURANCE §
COMPANY, §
  Defendants(s) §

IN THE DISTRICT COURT OF

HARRIS COUNTY, T E X A S

FILED
Chris Daniel
District Clerk
AUG 27 2013
Harris County, Texas

Time: _____
By _____ Deputy

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

165TH JUDICIAL DISTRICT

## <u>ORDER GRANTING DEFENDANTS' TRADITIONAL AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANTS' MOTION TO STRIKE THIRD AMENDED PETITION</u>

The Court considered Defendants' Traditional and No-Evidence Motion for Summary Judgment. The Court reviewed the motion, the supporting evidence and the response(s) The Court then considered the Defendants' Motion to Strike the Plaintiffs' Third Amended Petition, the evidence, court files and the response. The Court also considered the comments and positions espoused by both counsel at hearing on related case matters. Based on all of the above, the Court GRANTS both the Defendants' motion(s) for summary judgment and the Defendants' Motion to Strike the Third Amended Petition.

## BREACH OF CONTRACT CLAIMS

The fact pattern in the cases which formed the genesis of this lawsuit are fairly standard. Generally, an injured Plaintiff would file suit against a Defendant, and settle the case in such a way that a structured settlement called for the purchase by the Defendant of an annuity for the benefit of the Plaintiff. The Defendant in these cases chose Transamerica Occidental Life Insurance Company as the annuity provider. Transamerica would then begin making annuity payments directly to the individual Plaintiffs pursuant to the terms of the respective annuity contracts. To better understand the nature of these transactions, the court has attached to its order, as Exhibit "A", a rough drawing of the generic nature of these transactions.

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

At some point in time, the individual Plaintiffs would decide to sell their annuity rights to FinServe, which would buy them at a present value rate well below the face value of the annuity. FinServe would assist the individual Plaintiffs in obtaining a district court order approving the sale of the annuity (or a part of the annuity), a statutory requirement. In that proposed order, FinServe would include a paragraph requiring that the annuity company, in this case Transamerica, acknowledge in writing the transfer of rights to FinServe. ("acknowledgment letters") Transamerica would not be present at the hearing and would not have knowledge that the annuity rights had been sold until such time as it received a copy of the court order. In some case, it would send the acknowledgment letter to FinServe.

In most instances, the procedure appeared to work without interruption. Of the 530 +/- annuities in the instant case, only approximately 30 annuities had problems. Those problems stemmed from incomplete or bad addresses for the individual plaintiffs such that Transamerica could not provide adequate notice to them of the change, or a defective court order, requiring Transamerica to go back to court to get clarification of the order. Once the issue was cleared up, FinServe received all of the annuity payments for all but 1 of the 30 +/- cases which had trouble. The one remaining case is the subject of pending litigation in Florida so Transamerica has chosen not to make annuity payments in that case.

FinServe's plan was to purchase a large group of annuities, bundle them and sell them. The structure FinServe elected for this transaction was a mechanism called "securitization". FinServe was unable to close the deal using this method, so instead chose another method to sell the bundle. FinServe alleges that the reason it could not close the securitization deal was because Transamerica breached its contract to pay on the 30 +/- annuities. Transamerica disagrees. FinServe alleges its damages stem from the delta between the profit it would have received from the sale via securitization as opposed to the profit it received from the method it ultimately used to sell the bundle.

The genesis of Plaintiff's breach of contract claims stem from several allegations. First, FinServe posits that the acknowledgment letters were, in fact, contracts between FinServe and Transamerica. There is no evidence whatsoever to support this cause of action. The second alleged basis is that FinServe stands in the shoes of the individual Plaintiffs such that Transamerica's failure to promptly pay on the 30+/- troubled annuities constitutes a breach of contract. This basis is also flawed and cannot support the evidentiary weight required for a viable cause of action for several reasons, not the least of which is that Transamerica cannot be held contractually liable for failing to providing written notice to individuals, on one hand, when those same individuals have failed to give current contact information to Transamerica, nor can Transamerica be held contractually liable for confusing or inaccurate court orders, which require a trip to the courthouse to clarify.

## TORT CLAIMS

There were no tort causes of action pled in the case until Plaintiffs' filed their Third Amended pleading on July 19, 2013. This was four weeks _after_ the court imposed deadline for re-pleading and less than 4 weeks before the schedule trial date. The defense has filed a motion to strike the Plaintiffs' Third Amended Petition, which is well taken, particularly after the pattern of discovery abuses employed by the Plaintiffs in this case.

IT IS, THEREFORE,

**ORDERED** that Defendants' Traditional and No-evidence Motion for Summary Judgment is **GRANTED**. It is further

**ORDERED** that Defendants' Motion to Strike ~~Fourth~~ THIRD Amended Petition is hereby **GRANTED**. It is further

**ORDERED** that Defendants are entitled to recover court costs and reasonable attorneys' fees in relation to Defendants' defense of Plaintiffs' declaratory judgment action, pursuant to Tex.Civ.Prac.&Rem.Code Section 37.00, with the amount of such fees to be determined by evidentiary hearing.

Signed this 27th day of August, 2013.

_____
PRESIDING JUDGE ELIZABETH RAY

Unofficial Copy Office of Chris Daniel District Clerk

Unofficial Copy Office of Chris Daniel District Clerk

**FinServe**

**Π**

⑤ sells annuity

⑥ seeks court approval

⑦ give approval

**Court**

① Π v Σ suit filed

② case settles

② begins annuity payments

④

**Σ**

③ purchases annuity for Π

⑧ contacts to set up payments + proper acknowledgment

⑨ transfer payment stream from Π to FinServe

⑩ bundle and sell to 3°

**Third Party**

**Transamerica**



EXHIBIT

PENGAD 800-631-6989